## UNITED STEELWORKERS OF AMER-ICA, AFL–CIO, Plaintiff,

v.

## O'NEAL STEEL, INC., Defendant.

### Civ. A. No. 69–601.

United States District Court,
N. D. Alabama, S. D.

Dec. 2, 1969.

George C. Longshore, Cooper, Mitch & Crawford, Birmingham, Ala., Bredhoff, Gottesman & Cohen, Washington, D. C., for plaintiff.

C. V. Stelzenmuller, Thomas, Taliaferro, Forman, Burr & Murray, Birmingham, Ala., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

McFADDEN, District Judge.

This cause coming on to be heard unto the court without the intervention of a jury on October 14, 1969, upon full and fair consideration of evidence adduced upon the trial of the cause, the briefs and oral argument of counsel, the court proceeds to make and enter the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1. Plaintiff, United Steelworkers of America, AFL–CIO, is a labor organization and, on behalf of the members of Local No. 3004, was the collective-bargaining representative for the employees of the defendant, O'Neal Steel, at locations in Birmingham, Alabama, Atlanta, Georgia, Chattanooga, Tennessee, Jackson, Mississippi, and Jacksonville, Florida, and had been for a number of years prior to May 1, 1969.

2. Plaintiff and defendant entered into a collective bargaining agreement dated May 1, 1966, covering the rates of pay, hours of work, and conditions of employment to be observed between the parties. This contract expired by its terms on April 30, 1969.

3. Prior to April 30, 1969, the plaintiff's representatives and the defendant's representatives met for the purpose of negotiating a new collective bargaining agreement. The last meeting prior to the contract expiration date was April 29, 1969.

4. On May 1, 1969, no agreement had been reached and the members of plaintiff's union employed by the defendant went out on strike.

5. There was one meeting between the parties in May. The second meeting, after the strike commenced, was on June 10, 1969. Additional bargaining sessions continued from time to time between representatives of the parties, specifically, June 13, 17, 24 and July 18 and 25, 1969.

6. Defendant O'Neal Steel notified its employees by letter dated June 2, 1969 that it had hired a number of new men, some of whom were permanent employees which it intended to keep and some of whom were temporary. O'Neal further stated that it expected to continue to replace striking workers with permanent employees. This same position was repeated in a letter to the employees dated June 20, 1969.

7. Representatives of the defendant informed the union representatives in bargaining sessions on June 10, 1969, that it did not intend to replace permanent strike replacements with returning strikers. At the same meeting, the union took the position that strike replacements would not work unless there were jobs for them after all of the available strikers returned to work.

8. In subsequent bargaining sessions on June 13, June 24, July 16, July 18 and July 25, 1969, the reinstatement of strikers was a major subject of discussion and throughout these meetings the parties adhered to their firm position.

9. There was also some disagreement between the parties over wages, hours and working conditions throughout most of the bargaining sessions.

10. On July 19, 1969, the union voted to reject the company's latest offer.

11. The company representative telephoned the union representative on July 24, 1969 and told him the company had decided to discontinue the contract fabrication business and offered to meet and discuss the consequences of this decision. The union representative informed the company representative on this occasion that there would be a union membership meeting that afternoon and that he might have to have news for the company after that.

12. The union representative telephoned the Federal Mediator on July 24, 1969, and asked him to communicate to the company the fact that the union had accepted the company's last offer. The Federal Mediator telephoned the compa-

ny representative and relayed this message.

13. Representatives of the company and union met on July 25, 1969, at the Federal Mediation and Conciliation Service office, initially in separate sessions with the Federal Mediator present.

14. The company presented to the union at this session two proposed agreements, one a basic agreement (Pl. Exhibit 6, which is attached to the complaint as Exhibit 1) and the other a strike settlement side agreement (D. Exhibit 6). There was a discussion about the strike settlement side agreement and some agreement was reached on some parts of it. There was also discussion of some alternatives under the terms of the proposed agreement covering wages, hours of work and conditions of employment.

15. Paragraphs 1, 2 and 3 of the proposed strike settlement side agreement contain the following language:

"1. Permanent employees hired during the strike and strikers who returned during the strike will not be laid off or displaced to make room for strikers and will have seniority from date of hire.

"2. Upon execution of this side agreement the Company will promptly commence filling vacancies with strikers, filling them, as nearly as practicable, with strikers having the ability to do the work, in order of departmental seniority. (There will be no rolling or bumping, except for the phasing out of temporary summer help, as specifically hereinbelow provided.)

"3. Temporary employees hired during the strike will be laid off over a period of two weeks from date of execution hereof, and vacancies presently available, or made available by such layoff, will be filled by strikers during this two weeks; and likewise as vacancies arise during the year following the date hereof. Striking employees who have been replaced will be placed on a preferential hiring list for one year."

16. The parties were unable to agree on these three items and some other minor points. There were also some minor points in the basic document which were not agreed to.

17. At the outset of the July 25 meeting, the company took the position that one of the matters which had to be discussed was the side agreement. Company representatives stated the need for an agreement on the manner of filling vacancies and recalling of workers after the strike. The union took the position that this was not a part of the package offer and that it would not agree to the company's proposed method of recalling workers.

18. There was discussion of Item 4 of the side agreement instrument which provided for arbitration of the discharge of four men during the strike, and after considerable discussion the union agreed to it.

19. There was discussion of and agreement on Items 5 and 6 of the side agreement instrument with respect to animosity and ill-will and a hospital insurance plan effective date. The union agreed to a part of Item 5 and to Item 6.

20. The company took the position that it had a contract which included items of the side agreement, but the union would not agree and stated that it was not a part of the contract package it had accepted and that it objected to everything in the instrument in Items 1, 2 and 3 with respect to reinstatement of strikers and stated it was "in very strict disagreement about the entire nothing you've got for reinstating strikers."

21. The company representatives delivered to the union representatives copies of both documents and by a handwritten paragraph 18 incorporated by reference the strike settlement side agreement, part of which had not been agreed to by the union. Both of these instruments had been signed by the company.

22. The union representatives took the documents for review and did not sign

them at the meeting. The union representative stated that the union did not agree to the provision making the strike settlement agreement part of the basic agreement. At the close of the meeting, the union attorney told the company attorney that the side agreement was not going to be signed and that paragraph 18 of the basic document which incorporated the strike settlement side agreement by reference would be struck out. The company attorney responded that there would be no contract if anything was struck out.

23. The company instituted the wages, hours and other conditions of employment which it had offered to pay and started taking strikers back on July 26, 1969.

24. Sometime later, the local union representatives signed the proposed basic agreement contingent upon the deletion of the paragraph 18 thereof which made it subject to the strike settlement side agreement.

25. The company contends that there is no contract but if there is it necessarily contains the strike settlement side agreement. The union contends that it accepted the company's economic package and thereby entered into a contract which the company is now bound by law to agree to in writing.

■ 26. Plaintiffs did not carry the burden of establishing the existence of a contract and the terms thereof. Throughout the bargaining sessions commencing on June 10, 1969, one of the essential elements of controversy was the disposition of employees who had been hired as strike replacements and at the last session this was still a matter of heated controversy and the parties were as adamant then as in the beginning. The union never accepted the portion of the company's offer dealing with striker reinstatement and no full and final agreement was reached. The court is, therefore, of the opinion that the parties never agreed to all the essential elements of a contract.

## CONCLUSIONS OF LAW

■ 1. This action was properly brought under the provisions of Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and this court has jurisdiction of the subject matter and of the parties hereto.

■ 2. The usual and ordinary rules of offer and acceptance apply in the formation of collective bargaining agreements. Teamsters, Chauffeurs, etc., Local Union 524 v. Billington, 402 F.2d 510 (9 Cir., 1968).

■ 3. The subject matter of the side agreement was properly opened up and was an appropriate part of the bargaining sessions. Watson v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, 399 F.2d 875 (5 Cir., 1968).

■ 4. An offer must be made and accepted according to its terms for a contract to come into existence and since this did not occur no contract exists between the parties. Moglia v. Geohegan, 403 F.2d 110 (C.A.2, 1968); cert. denied, 394 U.S. 919, 89 S.Ct. 1193, 22 L.Ed.2d 453. Since the acceptance was conditional and therefore no acceptance, it is unnecessary to consider the authority of the local union officials to accept the offer and to execute a contract.

5. Since no contract ever came into being, plaintiff is entitled to no relief against defendant and this action is due to be dismissed.