**UNITED STEELWORKERS OF AMER-
ICA, AFL–CIO**

v.

**ROME INDUSTRIES, INC., d/b/a Rome
Plow Company.**

**Civ. A. No. 2147.**

United States District Court,
N. D. Georgia,
Rome Division.

Feb. 19, 1970.

Bernard Kleiman, Chicago, Ill., Mi-
chael H. Gottesman, Bredhoff, Gottes-
man & Cohen, Washington, D. C., J. R.

Goldthwaite, Jr., Adair, Goldthwaite, Stanford & Daniel, Atlanta, Ga., Jerome A. Cooper, Benjamin L. Edreich, Cooper, Mitch & Crawford, Birmingham, Ala., for plaintiff.

Albert E. Phillips, Swift, Currie, McGhee & Hiers, Atlanta, Ga., for defendant.

SIDNEY O. SMITH, Jr., Chief Judge.

This is a civil action in which plaintiff, the United Steelworkers of America, AFL–CIO, sues Rome Industries, Inc., d/b/a Rome Plow Co., seeking damages and injunctive relief. Jurisdiction is invoked pursuant to Section 301 of the Labor-Management Relations Act, 29 U.S.C.A. § 185. Plaintiff alleges that the parties entered a collective bargaining agreement on October 13, 1969, by virtue of plaintiff's acceptance of defendant's offer. Subsequently, the Union asserts:

Defendant has failed and refused to recognize the existence of said agreement; has failed and refused to formalize said agreement into the customary form for such agreement, the substance of same having been finally negotiated; has failed and refused to recognize and enforce the provisions of said agreement; and has violated rights of certain employees guaranteed by the provisions of said agreement.

Because of such omissions and breaches, it is alleged, plaintiff and the employees it represents have not received "the benefits" of the agreement, and to that extent have been injured.

For such injuries, plaintiff seeks incidental damages. But the thrust of the prayer is injunctive relief. Plaintiff alleges that it and the employees it represents will be irreparably injured unless the Court:

(1) determines the rights of the represented employees under the collective bargaining agreement; (2) requires that the defendant specifically perform the provisions of the agreement; (3) enjoins the defendant from failing or refusing to perform its obligations under the agreement; (4) requires the defendant to formalize the agreement by reducing it to writing and signing it; (5) issues a temporary injunction pending the outcome of this case.

The Company has moved the Court to dismiss the complaint for lack of jurisdiction over the subject matter, and for failure to state a claim upon which relief can be granted. The former grounds for this motion raises a preliminary question as to jurisdiction under Section 301 of the Labor-Management Relations Act, 29 U.S.C.A. § 185.

JURISDICTION

I.

In many civil actions, brought pursuant to Section 301, a court must of necessity first decide whether a contract exists. For instance in a suit for specific performance of an arbitration agreement, defended on the grounds that no contract exists, the court must resolve that issue first, before it can rule on the merits of the claim for specific performance. See Teamsters, etc., Local Union 524 v. Billington, 402 F.2d 510 (9th Cir. 1968); Warrior Constructors, Inc. v. International Union of Operating Engineers, Local Union No. 926, AFL–CIO (C.A. No. 9959, N.D.Ga., February —, 1966), aff'd 383 F.2d 700 (5th Cir. 1967). And where an employer sues for injunctive relief against and damages for an allegedly unlawful strike, the court must first decide whether a contract between the parties exists. In many such cases, that issue will be dispositive of the entire case, E. g., Lear Siegler, Inc. v. Inter. Union, United Auto, Aerospace and Agr. Implement Workers of America, UAW, 287 F.Supp. 692 (W.D.Mich.1968). Cf. United Steelworkers of America, AFL–CIO v. O'Neal Steel, Inc., 321 F.Supp. 235 (N.D.Ala.1969), where the union alleged that the employer's hiring of permanent replacements for striking members violated Section 301.

However, where there are no legal grounds for a breach of contract claim, allegations of breach are a legally

insufficient peg on which to hang Section 301 jurisdiction. *Cf.* Ferguson-Steere Motor Co. v. Inter. Broth. of Teamsters, etc., Local 577, 223 F.2d 842 (5th Cir. 1955). A complaint thus stripped of breach of contract allegations in substance alleges that the defendant committed an unfair labor practice. Where an employer and a labor organization have reached agreement, the employer's refusal, in response to the request of the labor organization, to reduce their agreement to writing and sign it is a refusal to bargain collectively and an unfair labor practice under Section 8(a) (5) of the National Labor Relations Act as amended, 29 U.S.C.A. § 158(a) (5). H. J. Heinz Co. v. N. L. R. B., 311 U.S. 514, 61 S.Ct. 320, 85 L.Ed. 309 (1941); N. L. R. B. v. Dalton Tel. Co., 187 F.2d 811 (5th Cir. 1951). The exclusive remedy for such an unfair labor practice is before the Board. San Diego Building Trades Council, Millmen's Union, Local 2020 v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959).

▮ This Court holds as a matter of law that jurisdiction under Section 301 of the Labor-Management Relations Act, 29 U.S.C.A. § 185, may not be invoked by a complaint which merely alleges generally that an employer's refusal to reduce an alleged collective bargaining agreement to writing, to sign it, and to implement it, constitutes a breach of the contract. Where a dispute between an employer and a collective bargaining agent is in this preliminary stance, before either party has committed specific acts in violation of the agreement, the proper remedy for either party which feels aggrieved is a proceeding before the National Labor Relations Board for an unfair labor practice. *See* Genesco, Inc. v. Joint Council 13, United Shoe Workers, 341 F.2d 482 (2d Cir. 1965).

Accordingly, the defendant's motion to dismiss for lack of jurisdiction over the subject matter must be, and hereby is granted.

## II.

However, if it should be found that the Court has jurisdiction over the subject matter herein, the Court makes the following

### FINDINGS OF FACT

On or about January 1, 1969, plaintiff, United Steelworkers of America, AFL–CIO (the "union") filed a petition for an election at the plant of the defendant, Rome Industries, Inc. d/b/a Rome Plow Company (the "company") for certification as the collective bargaining agent for the employees. Following a successful campaign and election, it was duly certified on or about February 25, 1969, by the National Labor Relations Board.

In the latter part of March, the union and company began extensive negotiations over the terms of a collective bargaining agreement between the two. In all, some 16 or 17 meetings were held over the subsequent five months. At these meetings, the union was principally represented by Mr. Ned Kocher, a representative of the International union, and the company by Mr. Fairfax Mullen, executive vice president and by Mr. Frank Swift, its labor relations attorney.

As is customary, the negotiations proceeded on the written drafts of proposals, initiated first by one party and then the other. When there was agreement on a provision of the proposed contract an "OK" with the date would be placed alongside on the draft under discussion. The use of the "OK" system meant that there was agreement on that provision, conditioned on agreement as to an entire contract. In that sense, the "OK" was a tentative meeting of the minds as to such provision.

In March, the union made its first written proposal. In April, the company made written counterproposals. In May, there were two additional drafts, the latter being prepared on May 21. (Pl.Ex. "A"). This was the last attempt at a written tabulation of all provisions in one instrument and was the basis for

negotiations throughout the summer. It recites in the caption "(Note: OK indicates tentative agreement)." This draft incorporated all previous proposals "Ok'd" and contained proposals on other necessary provisions not yet "OK'd". By early August, there was agreement and "OK" by many provisions as written or with interlineations inserted by hand to the typed provision, or specific written amendments, with the exception of the following substantial items:

ARTICLE XV—Representation
ARTICLE II–A—Union Security
ARTICLE IX—Holidays
ARTICLE XIV—Wages.

On or about August 13, 1969, the company made written proposals for all four articles. (Pl.Ex. "B"). Kocher said, at the time, that while the union was interested in the proposals they found no basis for them to get together and the membership would never agree to them. Swift replied that the four proposals constituted the company's last offer.

As a result, Kocher reported the status of the negotiations back to the local membership, the company proposals were rejected by them, and they voted to strike because of the failure to agree. The strike commenced shortly after the August 13th meeting.

On or about September 9, 1969, the last meeting occurred between the negotiators and a federal mediator. This meeting took place at the height of the strike. Each side thought it was "winning" the strike and the tempers of the negotiators were on edge. The final meeting ended in failure. There was constructive discussion about a discrimination clause and the union committee was notified that the company was cancelling group hospital insurance on all workers out on strike in one week. As to the four main articles of disagreement, however, both sides refused to yield. Swift stated that the company "would grant no further concessions and stood firm on its proposals." The mediator stated that there was no apparent basis for settlement.

After the meeting aborted, the strike continued for the reason that "the workers weren't getting a contract." By late September, it was obvious that the company was winning the strike. Most of the workers had reported back on the job and attendance at the union meetings dwindled. Shortly thereafter the strike was over.

Kocher thereafter conferred with his superiors in the International and the remaining committee members in the local. As a result, it was decided to write Attorney Swift. On October 13, 1969, Kocher wrote Swift, seeking to accept the company proposals of August 13, 1969, for a two-year contract. (See Pl. Ex. "C" appended hereto.) On October 20, 1969, Swift replied, indicating that in his view the parties were still far from agreement on a substantial number of issues. (See Pl.Ex. "D" appended hereto.)

At no time was a contract signed by any representative of the union or the company, although it was the intention of both parties throughout the negotiations to have a formal written executed contract. The International Constitution (D.Ex. #1) of the Union in Art. 17 (1) provides that all collective bargaining agreements must be signed by the officers.

In this union, all contracts are in the name of the International. However, the local members are, as here, consulted about the terms.

At no time was any proposal ratified by a vote of the local membership in a meeting called for such purpose or by the company's Board of Directors.

On October 28th, the union distributed a leaflet (D.Ex. #2) calling on the company to fulfill its duty to negotiate.

On November 4, Kocher replied to Swift (D.Ex. #3). Nothing further occurred until this suit was filed on November 26, 1969. On or about December 20th, the company received a petition from 93 of its workers calling for a new election (D.Ex. #4).

## APPLICABLE LAW

■ While "federal law" controls, the specific law governing the formation and existence of a collective bargaining agreement ordinarily consists of the normal contract rules of offer, acceptance, and intent. See Dowd Box Co. v. Courtney, 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962); Warrior Constructors, Inc. v. International Union of Operating Engineers, Local Union No. 926, 383 F.2d 700, 708 (5th Cir. 1967); Genesco, Inc. v. Joint Council 13, United Shoe Workers, 341 F.2d 482 (2d Cir. 1965); F. W. Means & Co. v. N. L. R. B., 377 F.2d 683, 686 (7th Cir. 1967); Lozano Enterprises v. N. L. R. B., 327 F.2d 814, 819 (9th Cir. 1964); United Steelworkers of America, AFL–CIO v. O'Neal Steel, Inc., 321 F.Supp. 235 (N.D.Ala. 1969); Teamsters v. Clearfield Cheese Co., 64 LRRM 2748, 2750 (W.D.Pa. 1967).

■ Of course, the absence of an executed contract is not always dispositive of the contractual problem, especially if the parties indicate an intention to be bound by an oral contract or accept performance of the other in contemplation of a written contract. See United Steelworkers of America v. C. C. I. Corporation, 395 F.2d 529 (10th Cir. 1968), cert. den. 393 U.S. 1019, 89 S.Ct. 627, 21 L.Ed. 2d 564 (1969). The intention of the parties is paramount. Genesco, Inc. v. Joint Council 13, United Shoe Workers, 341 F.2d 482 (2d Cir. 1965). Thus, the normal rules apply as to offer and acceptance. See Teamsters, Chauffers, etc., Local Union 524 v. Billington, 402 F.2d 510 (9th Cir. 1968); F. W. Means & Co. v. N. L. R. B., 377 F.2d 683 (7th Cir. 1967). A clear "meeting of the minds" at the same time and in the same sense is the essence of any contract.

Thus, one facet of these rules is that the parties must reach agreement on the essential terms of the contract. There is no contract

"* * * where a complete and operative offer is made, but is not unconditionally accepted. The reply may be a partial or conditional acceptance, in which case certain terms of the offer are agreed upon while others are not. The parties may proceed with their negotiations without any new and distinct reference to the terms already assented to. *There is no contract until agreement is reached on all terms, the preliminary and partial agreements being expressly or impliedly incorporated into the final offer or acceptance.*" (Emphasis added) (Corbin on Contracts, One Volume Edition, § 29, p. 45 (1952).

Similarly, the parties are free to set the point as of which they enter a contract.

One of the most common illustrations of preliminary negotiation that is totally inoperative is one where the parties consider the details of a proposed agreement, perhaps settling them one by one, with the understanding during this process that the agreement is to be embodied in a formal written document and that neither party is to be bound until he executes this document. (Corbin on Contracts, One Volume Edition, § 30, p. 47 (1952).

This rule has been applied specifically to collective bargaining agreements by the Fifth Circuit Court of Appeals. Warrior Constructors, Inc. v. International Union of Operating Engineers, Local Union No. 926, 383 F.2d 700, 708 (5th Cir. 1967). The Court of Appeals there held that the intention of the parties governs whether a contract takes effect before a contemplated writing is executed. In view of (1) the doubtful enforceability of oral contracts intended to last longer than one year, (2) the importance national labor policy attaches to written, signed collective bargaining agreements (citing H. J. Heinz Co. v. N. L. R. B., 311 U.S. 514, 523–526, 61 S.Ct. 320, 85 L.Ed. 309 (1941)), and (3) previous practice of having signed, written agreements, the Court of Appeals also stated that it felt no one really believed that the parties would be bound until the contract was fully executed and delivered. Id. 383 F. 2d at 708–709.

Moreover, the quid pro quo of any collective bargaining agreement is the "no strike" for "arbitration" clauses. Textile Workers, etc. v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957); New Orleans Steamship Ass'n v. General Longshore Workers, 389 F.2d 369 (5th Cir. 1968). Indeed, a strike may sometimes constitute such a repudiation as to justify recission by the company. See United Electrical, R & M Wkrs, etc. v. N. L. R. B., 96 U.S.App.D.C. 46, 223 F.2d 338 (1955); Local Joint Exec. Bd., etc. v. Nationwide Downtowner Motor Inns, 229 F.Supp. 413 (W.D. Mo.1964).

## CONCLUSIONS

■ Application of the above rules to the facts of this case leads to the conclusion that there is no contract between the parties. Prior to October 13, 1969, even agreement in principle had not been reached on four vital matters. Moreover, such agreement as had been reached on the other provisions was only tentative and dependent upon agreement on the whole. The contract is admittedly entire and not severable and therefore the validity of each part is dependent on the whole. Likewise, it was the clear intention of both parties to realize a formal executed contract.

On August 13, 1969, when the last four company proposals were submitted they were clearly rejected by the union bargaining representative and repudiated by the strike which followed. Even at that time there were loose ends as to which of the other "O.K.'d" provisions applied, the duration of the proposed contract, and the like.

When the ill-fated September meeting occurred and the company restated its stand, it did not thereby leave a new offer for acceptance at the union's whim some vague time in the future. To the contrary, the proposals were rejected again and repudiated by the break-off of the meeting and the continuance of the strike. There was obviously no recognition of any provision by either party, nor was there performance of any provision by either party, so as to justify an effort to formulate a contract as of such time. The October 13th letter came only after a serious lengthy strike and was a belated attempt to accept the four proposals already two months old. As such it constituted at most a new offer on the part of the union which was refused by the company. Even later, the union showed no recognition of the contract by insisting that the company negotiate anew. Throughout, the company made clear its intention not to be bound until clear and unequivocal agreement was reached on all provisions. Such is not the case here.

Accordingly, it is concluded, even if jurisdiction exists, that no collective bargaining agreement has been reached by the parties.

For the reasons stated, the case is dismissed.

It is so ordered.

## APPENDIX

### EXHIBIT "C"

Letterhead of United Steelworkers of America

District 35

Atlanta, Georgia 30309

Certified Mail—
Return Receipt Requested

October 13, 1969

Mr. Frank M. Swift
Swift, Currie, McGhee & Hiers
2000 Gas Light Tower
Atlanta, Georgia 30303

Re: Labor Agreement—Rome Industries, Inc.

Dear Mr. Swift:

In order to consummate a Labor Agreement between Rome Industries, Inc., and the United Steelworkers of America, the Union Agrees as follows:

1. The Union withdraws without reservation all contract proposals by the Union which have not been mutually agreed upon by the parties.

2. The Union withdraws all objections to outstanding contract proposals

made by the Company and agrees without reservation to all such outstanding proposals which had not been mutually agreed upon up to and including those made by the Company on August 13, 1969.

3. The Union agrees to sign a contract incorporating all items mutually agreed upon during negotiations, plus the Company proposals mentioned in Item 2 above, for a period of two years, as proposed by the Company.

If you will kindly prepare copies of the complete contract, I will make arrangements for signing it. I will need a total of six signed copies for the use of the Union.

Very truly yours,

/s/ Ned Kocher

Ned Kocher, Representative
United Steelworkers of America

NK:pm

cc: M. C. Weston, Jr.
J. A. Cooper
B. G. McFall

EXHIBIT "D"

Letterhead of Swift, Currier, McGhee & Hiers

Attorneys at Law

Atlanta, Georgia 30303

October 20, 1969

Mr. Ned Kocher, Representative
United Steelworkers of America
District 35
1776 Peachtree Street, N. W.
Atlanta, Georgia 30309

Dear Mr. Kocher:

This is to acknowledge your letter of October 13 regarding a Labor Agreement between Rome Industries, Inc., and the United Steelworkers of America.

Both the management of Rome Industries, Inc., and I were surprised to receive this letter, as we were told by you that many of our proposals were entirely unacceptable and would never be approved by the union. We also understand from members of the union bargaining committee and the vast majority of the employees that they are through with the union and consider union efforts to be at an end.

Nevertheless, if, as stated in your letter, the union desires to pursue further the matter of a contract, the company must honor its legal obligation to bargain in good faith and stands ready to resume negotiations.

There were many matters tentatively agreed upon but subject however, to a final agreement on an entire contract. When negotiations were broken off by the union and the strike was called, there were many unresolved issues including, as I have said earlier, a number that the union declared would never under any circumstances be agreed to. On the table in the present state of negotiations there are a number of ambiguities in some of the proposals, some unresolved proposals were left open in the alternative, others that were never even tentatively agreed upon and others that may be subject to misinterpretation. Obviously, there is lots to be done before a contract can be written in final form.

Unfortunately, my schedule calls for protracted negotiations in Alabama on a contract that expires on November 1. For that reason, I will not be able to meet with you and the committees until sometime after the first of the month. I suggest that you pick a date that will be convenient for you and your committee and let me know. Our usual meeting place in the plant will be available.

Very truly yours,

/s/ Frank M. Swift

FMS:sjb

cc: Rome Industries, Inc.