**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**DOWNS–CLARK, INC., Respondent.**

No. 72–3471.

United States Court of Appeals, Fifth Circuit.

June 5, 1973.

Elmer P. Davis, Director, Region 16, N. L. R. B., Michael F. Messitte, Atty., NLRB, Fort Worth, Tex., for petitioner.

Hugh M. Smith, Dallas, Tex., for respondent.

Before THORNBERRY, AINSWORTH and RONEY, Circuit Judges.

AINSWORTH, Circuit Judge.

This is an N. L. R. B. petition pursuant to section 10(e) of the National Labor Relations Act [1] for enforcement of its order against respondent company Downs-Clark, Inc. The Board found that Downs-Clark had violated section 8(a)(5) and (1) of the Act by refusing to execute a written contract incorporating what the Board deemed an agreement reached between the Company and the Oil, Chemical, & Atomic Workers International Union. Downs-Clark had offered to sign a contract if it contained certain provisions as to wages. The Board ordered the Company to delete those provisions and sign the agreement. [2]

To determine whether substantial evidence on the record supports the Board's majority's findings, we must examine the facts and circumstances leading to its decision. [3]

The Company and the Union began collective bargaining in January 1970. Both indicated that the effectiveness of any agreements reached was contingent upon later formulation of a contract encompassing all issues between the Company and the Union. Downs-Clark proposed merit raises for four or five specific employees; the Union objected. In April 1970 the Company granted these merit raises, and a strike ensued. The Union filed an unfair labor practice charge, alleging that the Company's granting these wage increases evidenced a refusal to bargain. The strike ended in August 1970 and in September the matter was settled and negotiations were resumed.

The Company attempted to discuss merit increases as they related to the strike and unfair labor practice charge, but the Union negotiator refused to discuss the issue. There were further negotiations, but disagreement remained as to wages and the duration of the anticipated agreement. At the final bargaining session on December 11, 1970, the federal mediator informed the Union that he did not think the Company would make any further changes in its position. The Union then decided to acquiesce in the Company's proposals. An effective date still had not been set. The Company was to draw up a contract. The Union negotiator compared his "check-list of items agreed to and items still open" with the Company negotiator's notes. The Company's negotiator sought to confirm that the Company had reserved the right to make merit increases. The Union negotiator would not confirm agreement on this point which was the central dispute between the parties. The proposals which previously had been reduced to writing did not include an ef-

---

1. 29 U.S.C. § 151 et seq.

2. The Board's decision and order are reported in 197 NLRB 144.

3. See section 10(e) of the Act, 29 U.S.C. § 160(e); Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488, 71 S.Ct. 456, 465, 95 L.Ed. 456 (1951); N.L.R.B. v. Fant Milling Co., 360 U.S. 301, 309 n.

10, 79 S.Ct. 1179, 1184, 3 L.Ed.2d 1243, 1249 (1959), enforced on remand, 5 Cir., 1959, 272 F.2d 773; N.L.R.B. v. Texas Coca-Cola Bottling Co., 5 Cir., 1966, 365 F.2d 321, 323; Oil City Brass Works v. N.L.R.B., 5 Cir., 1966, 357 F.2d 466, 469; San Antonio Machine & Supply Corp. v. N.L.R.B., 5 Cir., 1966, 363 F.2d 633, 635.

fective date or duration of the agreement, nor any provisions as to wages.

The Union negotiator testified before the Trial Examiner that he asked the mediator and the Company's negotiator if there were any changes in the Company's position on wages or duration of the agreement, and he was told by each that there were not. On appeal, the Union argues that the written proposals at this stage constituted a complete contract and the only agreement between the parties. This position is untenable. The Union has not pursued any theory that wages and term were understood to be orally agreed to by the parties; indeed, the Union now protests that at no time did it agree to the Company's position on wages. On the other hand, the written proposals do not cover two elements essential to a labor contract, wages [4] and duration.[5]

The Board found that the Company and the Union reached agreement on December 11, and ordered the Company to execute the contract or, at the Union's option, to resume bargaining and to embody any understanding reached in a signed agreement. We find that the Board's decision is not supported by substantial evidence. Rather, the record clearly shows that there was no meeting of the minds on the key issues of wages and merit increases. The parties had not accomplished their expressed intention to arrive at a complete, integral agreement. "While a labor contract is *sui generis*, like commercial or other contracts it comes into being with binding effect only after there has been a meeting of the minds by the contracting parties on a complete agreement." Shreveport Garment Manufacturers, 133 NLRB 117, 121; *see also* Dean A. Anderson d/b/a Anderson's, 161 NLRB 1470. Furthermore, ". . . the rules by which it is determined whether the parties have made a contract are not the rules by which it is determined whether or not the parties have bargained in good faith." San Antonio Machine & Supply Corp. v. N. L. R. B., 5 Cir., 1966, 363 F.2d 633, 636, quoting from Shannon & Simpson Casket Co., 99 NLRB 430, enforced, 9 Cir., 1953, 208 F.2d 545. Lozano Enterprises v. N. L. R. B., 9 Cir., 1964, 327 F.2d 814, on which the Board relies, is distinguished by its own explanation of its narrow holding: "We do not at all mean to hold that, in general, the normal rules of offer and acceptance are not determinative as to whether an agreement has been reached in a collective bargaining situation. We do hold that where, as in this case, the terms proposed by the union are in fact acceptable to the employer, but delivery of the signed contract is withheld for the obvious tactical purposes that here appear, it is proper for the Board to conclude that there has been a failure or refusal to execute a written contract incorporat-

---

4. Section 8(d) of the National Labor Relations Act (29 U.S.C. § 158(d)) provides in part that collective bargaining is: ". . . the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to *wages*, hours, and other terms and conditions of employment, or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract incorporating any agreement reached if requested by either party, but such obligation does not compel either party to agree to a proposal or require the making of a concession: . . . ." [Emphasis added.] *See* N.L.R.B. v. Jones & Laughlin Steel Corp., 301 U.S. 1, 45, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352 (1937);

N.L.R.B. v. Union Pacific Stages, Inc., 9 Cir., 1938, 99 F.2d 153, 159, 164; Wilson & Co., Inc. v. N.L.R.B., 8 Cir., 1940, 115 F.2d 759, 763; N.L.R.B. v. Boss Mfg. Co., 7 Cir., 1941, 118 F.2d 187, 189; N.L.R.B. v. Texas Coca-Cola Bottling Co., 5 Cir., 1966, 365 F.2d 321.

5. The National Labor Relations Board has held that where no term is specified or understood, there is no valid contract. Ridge Citrus Concentrate, Inc., 133 NLRB 1178, quoting from Stylecraft Furniture Company, 111 NLRB 930: "As the contract was incomplete in this important respect and as this Board cannot supply the omission [of the term], an order directing Respondents to sign the agreement would not be appropriate."

ing the agreement reached within the meaning of section 8(d)." *Id.* at 819. The Company's steadfast maintenance of its position on merit increases distinguishes the instant case from other cases which find bad faith in the Company's reversal of its position, withdrawal of previous agreements, or substitution of discarded terms. *See, e. g.,* N. L. R. B. v. International Furniture Co., 5 Cir., 1954, 212 F.2d 431, 433; San Antonio Machine & Supply Corp. v. N. L. R. B., *supra,* 363 F.2d at 641.

We find that at no time was a contract agreed to by the parties. Therefore, the Board cannot properly order Downs-Clark to sign an agreement with the Union. "In the very process of bargaining, both the statute [section 8(d) of the Act, 29 U.S.C. § 158(d)] by its plain terms and the Court decisions affirm that the making of the labor agreement is not for either Board or Court. The Act spells this out by providing that the mutual good faith 'obligation does not compel either party to agree to a proposal or require the making of a concession. . . .' " N. L. R. B. v. Herman Sausage Co., 5 Cir., 1960, 275 F.2d 229, 231 [footnotes omitted]. As the Supreme Court has explained in N. L. R. B. v. American Nat. Ins. Co., 343 U.S. 395, 401–402, 72 S.Ct. 824, 828, 96 L.Ed. 1027 (1952):

> ". . . The National Labor Relations Act is designed to promote industrial peace by encouraging the making of voluntary agreements governing relations between unions and employers. The Act does not compel any agreement whatsoever between employees and employers. Nor does the Act regulate the substantive terms governing wages, hours and working conditions which are incorporated in an agreement. The theory of the Act is that the making of voluntary labor agreements is encouraged by protecting employees' rights to organize for collective bargaining and by imposing on labor and management the mutual obligation to bargain collectively." [Footnotes omitted.]

After pointing out that section 8(d) of the Act (29 U.S.C. § 158(d)) "contains the express provision that the obligation to bargain collectively does not compel either party to agree to a proposal or require the making of a concession . . .", the Supreme Court further states that it is clear "that the Board may not, either directly or indirectly, compel concessions or otherwise sit in judgment upon the substantive terms of collective bargaining agreements." *Id.* 343 U.S. at 404. 72 S.Ct. at 829. *See also* N. L. R. B. v. Herman Sausage Co., *supra,* 275 F.2d at 231–232, citing the above and further stating: "The obligation of the employer to bargain in good faith does not require the yielding of positions fairly maintained. It does not permit the Board, under the guise of finding of bad faith, to require the employer to contract in a way the Board might deem proper."

Enforcement denied.