**EASTERN AIR LINES, INC., Plaintiff,**

v.

**AIR LINE PILOTS ASSOCIATION, INTERNATIONAL and Larry D. Schulte, Defendants.**

No. 86–1246–CIV.

United States District Court,
S.D. Florida,
Miami Division.

Sept. 25, 1987.

* Defendant shall respond to Count of Plaintiffs' Complaint within fifteen (15) days from the date of this Order.

Richard P. Magurno, Eastern Air Lines, Inc., Carmen L. Leon, Miami, Fla., David M. Brown, Smith, Gambrell & Russell, William W. Gardner, Atlanta, Ga., Michael J. Madigan, P.C., Richard L. Wyatt, Jr., Micheller L. Gilbert, Stephanie G. Miller, Akin, Gump, Strauss, Hauer & Feld, Washington, D.C., for plaintiff.

Jonathan A. Cohen, Air Line Pilots Assoc., Washington, D.C., Jeffrey M. Weissman, Sparber, Shevin, Shapo & Heilbronner, Miami, Fla., Michael E. Abram, James L. Linsey, Stephen Presser, Mary E. Vogel, Cohen, Weiss and Simon, New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

NESBITT, District Judge.

This case is before the Court upon Cross–Motions for Summary Judgment filed by Plaintiff EASTERN AIR LINES, INC. ("EASTERN"), and by Defendants AIR LINE PILOTS ASSOCIATION, INTERNATIONAL and LARRY D. SCHULTE (referred to collectively as "ALPA"). Now having heard oral argument on the motions, having examined all of the memoranda filed by the parties, and having considered the record, the Court concludes as follows.

In its original complaint, filed June 10, 1986, EASTERN charged that ALPA was seeking arbitration of a grievance before the Eastern Airlines System Board of Adjustment ("System Board") in violation of both the Railway Labor Act, 45 U.S.C. § 151 et seq. ("RLA"), and the collective bargaining agreement the parties negotiated in late February 1986 (the "Agreement"). Specifically, EASTERN alleged that ALPA's grievance sought to change the rates of pay provided for in the Agreement, in contravention of the RLA. The complaint sought an order enjoining ALPA from attempting to alter the rates of pay provided for in the Agreement and from submitting the issue to arbitration before the System Board.

On July 11, 1986 EASTERN filed a first amendment to the complaint. The amendment alleges that the wage rates provided for in the Agreement constituted an essential element of the contract; because there was no meeting of the minds as to that element, no valid collective bargaining agreement had been formed. The amendment further alleges that the parties had agreed in advance of negotiations to conclude only a complete and comprehensive collective bargaining agreement; therefore, the lack of agreement on wage rates showed that no agreement had been formed. The first amendment to the complaint seeks an order declaring that: (1) no valid collective bargaining agreement exists between the parties; (2) in absence of such an agreement the System Board lacks jurisdiction to consider any disputes between the parties; and (3) negotiation and mediation are the exclusive methods by which to resolve the dispute under the RLA. On September 10, 1986 EASTERN filed a second amendment to the complaint, extending its claims to other provisions of the collective bargaining agreement that the parties now dispute.

ALPA's answer to the complaint (as amended) and amended counterclaim assert that there has been a valid and enforceable collective bargaining agreement in effect since February 23, 1986 and that any disputes between ALPA and EASTERN over the provisions of the Agreement should be submitted to arbitration before the System Board. The counterclaim also requests a declaratory judgment stating that the agreement is, and has been since February,

a valid and enforceable collective bargaining agreement between the parties.

In accordance with the provisions of the RLA, 45 U.S.C. § 184, EASTERN and ALPA have maintained a grievance procedure providing for binding arbitration. Arbitration is conducted before the System Board. The jurisdiction of the System Board, as provided in the agreement between the parties, is as follows:

> [J]urisdiction over disputes between any employee covered by the Pilots' Agreement and Eastern growing out of grievances or out of interpretation or application of any of the terms of the Pilots' Agreement. The jurisdiction of the Board shall not extend to proposed changes in hours of employment, rates of compensation or working conditions covered by existing agreements between the parties hereto.

The previous collective bargaining agreement between the parties expired in May 1985. The parties operated under an interim agreement for a time and on December 5, 1985 EASTERN delivered its opening bargaining proposal to ALPA. The parties exchanged numerous proposals over the next two months. In early January 1986 the National Mediation Board ("NMB") appointed a mediator to assist in the bargaining process.

By late January, the bargaining had not been fruitful and the mediator recommended that the parties be released from mediation and offered arbitration of the dispute. EASTERN declined arbitration. The NMB then released the parties to engage in self-help at the expiration of a 30–day cooling off period which would have ended on February 26, 1986.

As the end of the cooling off period approached, EASTERN's financial situation had grown precarious and the company was actively seeking a merger partner. EASTERN had declared a strategy of "Fix it, sell it, or put it in Chapter 11"; such was the atmosphere in which the negotiations were conducted.

On February 23, 1986 negotiations began at 8:00 a.m. ALPA's twelfth proposal was rejected by EASTERN in the early after-noon. At about the same time, EASTERN received an offer from Texas Air to purchase EASTERN. The offer was due to expire at midnight on February 23, 1986. EASTERN represented to ALPA that they would accept Texas Air's offer unless concessionary agreements with the unions could be concluded by midnight.

In the early evening, EASTERN presented EAL #7, its seventh and final proposal. The ALPA negotiating committee declined to recommend ratification or non-ratification of EAL #7. Upon EASTERN's request, however, the committee presented the proposal to the Masters Executive Council ("MEC"), the general ALPA policy-making body for EASTERN pilots.

The MEC asked the negotiating committee many questions concerning the meaning of certain terms of the proposal. The committee was unable to answer all of the questions. Even some MEC officials described the proposal as a "bare-bones" outline. Eventually, at 2:45 a.m. on February 24, the MEC voted in favor of ratifying the proposal even though the meaning of some of the terms had not been clarified. The proposal was signed by all the appropriate representatives of both parties, and the word "proposal" was stricken from the document and the word "Agreement" was inserted in its place. Despite all these efforts, though, EASTERN accepted Texas Air's offer of purchase shortly thereafter.

For months, both parties acted in accordance with the belief that a valid collective bargaining agreement had been formed. Disputes as to the specifics of the contract quickly arose, though, when the parties attempted to transfer the four-page handwritten document to a formal, printed form. Subsequent proposals and counter proposals focused upon six items that the parties disagree on: (1) pay parity; (2) labor parity in the event of a takeover; (3) the terms of a commuter airline service side letter; (4) contributions to a retirement fund; (5) the terms of dental and health care programs; and (6) the terms of a so-called "supermarket" bid. The parties exchanged formal printed versions of these items in an attempt to agree on the details.

The proposals exchanged, however, are very different in some respects and cannot be easily reconciled. It is undisputed that the provisions of the executed handwritten agreement of February 1987 are recited in abbreviations or in shorthand formulations.

When agreement could not be reached on these "open issues" ALPA filed a series of grievances with the System Board seeking to have each of the issues resolved through arbitration. The initial dispute related to the pay parity provision of the document which provided for: "Parity—with IAM [International Association of Machinists], TWU [Transit Workers Union], non contract for general across the board salary increases only." Certain employees of EASTERN were given salary increases after the document was signed. EASTERN alleged that the increases were merit increases while ALPA contended that they were "across the board" increases that triggered the pay parity provision. EASTERN refused to process the grievance or submit to arbitration before the System Board. This pay parity dispute led EASTERN to file the original complaint in this action alleging that ALPA was attempting to change the existing rates of pay in violation of the parties' collective bargaining agreement.

EASTERN now moves for summary judgment claiming that no valid collective bargaining agreement exists between it and ALPA. EASTERN contends that the dispute concerns the formation of a collective bargaining agreement and is therefore a "major dispute." Under the RLA, major disputes fall within the exclusive jurisdiction of the district court rather than the System Board. EASTERN also asserts that because there was no meeting of the minds between it and ALPA, no valid contract was ever formed on February 23, 1986. EASTERN concludes that there is no genuine issue of material fact concerning its claims that no collective bargaining agreement was formed and that the System Board does not have jurisdiction over the grievances filed by ALPA.

EASTERN relies on several facts to demonstrate that there was no meeting of the minds and therefore no agreement. First, the parties had agreed at the outset that absent agreement on all issues no contract would result. Further, discovery has revealed the parties did not have the same "understanding" of what the parties "understood" when they signed the abbreviated agreement. EASTERN finally asserts that the subsequent unsuccessful attempts to convert the four-page agreement to formal contract form demonstrate that there was no meeting of the minds at the time the parties entered into the Agreement.

ALPA's basis for its summary judgment motion is that this action concerns the application and interpretation of an existing collective bargaining agreement and is therefore a "minor dispute" under the RLA, and within the exclusive jurisdiction of the System Board. ALPA asserts that the parties concluded a valid and binding collective bargaining agreement on February 23, 1986 and that their current dispute over some terms of the agreement does not mean that they failed to reach a meeting of the minds as to the Agreement.

The RLA, a comprehensive statute governing labor relations in both the airline and railroad industries, was designed to "provide for the prompt and orderly settlement of all disputes, concerning rates of pay, rules and working conditions." 45 U.S.C. § 151a; *Elgin, J. & E. Ry. v. Burley*, 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945) *aff'd on rehearing* 327 U.S. 661, 66 S.Ct. 721, 90 L.Ed. 928 (1946). Matters related to the formation of a valid collective bargaining agreement are classified as "major" disputes and are committed to the exclusive jurisdiction of the judicial system. 45 U.S.C. §§ 155, 156; *Elgin*, 325 U.S. at 723, 65 S.Ct. at 1289. Disputes related to the interpretation or application of an existing collective bargaining agreement are classified as "minor" disputes under the RLA and are committed to the exclusive jurisdiction of the system board of adjustment. 45 U.S.C. § 184; *Elgin*, 325 U.S. 723–24, 65 S.Ct. at 1289–90. It is clear that this Court has jurisdiction of the case at the outset because the Court always has jurisdiction to determine its own jurisdiction. *United States v. United Mine*

*Workers,* 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947); *Fitzgerald v. Seaboard System R.R., Inc.,* 760 F.2d 1249 (11th Cir. 1985).

The ordinary common law of contracts applies to the formation of a contract even in the context of a collective bargaining agreement governed by the RLA. *See Goclowski v. Penn Central Transp. Co.,* 571 F.2d 747 (3d Cir.1978); *United Steelworkers v. Rome Indus., Inc.,* 321 F.Supp. 1170 (N.D.Ga.) *aff'd* 437 F.2d 881 (5th Cir.1970). *See also Warrior Constructors, Inc. v. International Union of Operating Eng'rs.,* 383 F.2d 700 (5th Cir.1967).

It is beyond peradventure that one of the requirements of a binding contract is a manifestation of mutual assent—there must be a "meeting of the minds." It is also fundamental, however, that there does not have to be a subjective meeting of the minds on all issues. "For a contract to exist there does not have to be, and rarely is, a subjective "meeting of the minds" all along the line." *WPC Enterprises, Inc. v. United States,* 323 F.2d 874 (Ct.Cl.1963). *See also Fairway Center Corp. v. U.I.P. Corp.,* 502 F.2d 1135, 1140 (8th Cir.1974) (quoting *Industrial Products Mfg. Co. v. Jewett Lumber Co.,* 185 F.2d 866, 869 (8th Cir.1950)); *The Path of the Law,* 10 Harvard L.Rev. 457, 464 (1897).

EASTERN relies on decisions that find that no contract was formed because there was no meeting of the minds. Only one of those cases, however, involves a situation such as is before the Court, namely, an offer ratified by the Union and then signed by all the parties. In all of the other cases EASTERN cites, either one party to the agreement had not executed the written document or one party had not ratified the agreement. *See, e.g., Caporale v. Mar Les, Inc.,* 656 F.2d 242 (7th Cir.1981), *NLRB v. Downs–Clark, Inc.,* 479 F.2d 546 (5th Cir.1973), *United Food & Commercial Workers Union Local 304A v. NLRB,* 772 F.2d 421 (8th Cir.1985), and *NLRB v. New York–Keansburg–Long Branch Bus Co., Inc.,* 578 F.2d 472 (3d Cir.1978) (agreements not reduced to a signed writing); *Independent Union of Flight Attendants*

*v. Pan American World Airways, Inc.,* 624 F.Supp. 64 (E.D.N.Y.1985) (signed writing never ratified by the union); *International Bro. of Pulp, Sulfite and Paper Mill Workers Local No. 61,* 144 NLRB 939 (1963) (ratified modifications never reduced to an accurate writing).

The only case in which a signed and ratified contract was found to be invalid because of a failure of the parties' minds to meet is *Waldon, Inc. v. International Assoc. of Machinists and Aerospace Workers,* 282 NLRB 82 (1986). In *Waldon,* however, the National Labor Relations Board found that the contract was signed by mistake because the corporation never intended to sign a contract that included the disputed provisions. EASTERN has never stated that they did not intend to sign the agreement at issue. EASTERN only alleges that they did not intend the contract to mean what ALPA asserts that it means. Thus, even though *Waldon* is not binding on this Court, it is distinguishable in any case.

ALPA, on the other hand, has cited two cases that are factually similar to this case. In *United Steelworkers of America v. Logan Park Care Center,* 634 F.Supp. 182 (S.D.W.V.1986) the union sought to arbitrate a dispute over wages arising out of a collective bargaining agreement. The employer argued that the contract was void because there was no meeting of the minds on an essential element of the contract, namely wages. The court stated

to hold that different interpretations of a substantive clause creates a threshold issue for the courts, would be to fashion an exception quite capable of swallowing the rule—the rule being that contractual disputes shall be resolved by arbitration when the parties have agreed to do so.

*Id.* at 185.

In *Warehouseman's Union Local 206 v. Continental Can Co.,* 821 F.2d 1348 (9th Cir.1987) the union sought to compel the employer to arbitrate a grievance. The parties had formed a collective bargaining agreement when the union ratified the employer's final offer which "made brief mention" of the disputed provision. The union

objected to the form of a formalized draft of the contract, claiming it was not what they had agreed to. The company argued that the contract was nullified because the parties' understanding of the language was so disparate that there was no meeting of the minds.

The United States Court of Appeals for the Ninth Circuit noted that the company's final offer and the union's ratification of the offer "bear all the outward indicia of a valid contract." *Id.* at 3180. Based on the parties' objective manifestations of agreement, the court found that a contract had been formed. The court placed the burden of showing there was no meeting of the minds on the employer, then held that the company failed to carry that burden. All the employer could show was that there was a current disagreement over the meaning of the contract terms.

Recognizing that collective bargaining agreements differ from ordinary contracts, courts also consider other specific factors in determining whether parties have formed a valid collective bargaining agreement. For example, courts often look to: (1) the past collective bargaining history of the parties; (2) whether the agreement was reduced to writing; (3) whether the agreement was ratified by the union and signed by the employer; (4) whether the parties implemented the agreement and operated under it; and (5) whether the parties expressed an intent to form a contract and to conclude negotiations when the alleged agreement was accepted. *See, e.g., Washington Hghts.–West Harlem–Inwood v. Dist. 1199,* 748 F.2d 105 (2d Cir.1984); *Acme Markets, Inc. v. International Assn. of Machinists, Lodge Local No. 724,* 506 F.Supp. 92 (E.D.Pa.1980). In the instant case, all of these factors lead to the conclusion that a valid collective bargaining agreement was formed between ALPA and EASTERN in February 1986.

■ EASTERN insists that the signed document was not intended to be a collective bargaining agreement but represented a preliminary understanding. Although that may have been EASTERN's subjective intent, that subjective intention is contrary to the objectively expressed language of the Agreement. The first page of the document clearly shows that the word "proposal" was crossed out and the word "agreement" written in. This change was made, in fact, by EASTERN's own negotiator. Also, EASTERN expressly recognized the existence of a collective bargaining agreement in its original complaint filed in this court wherein it recited, "EASTERN and ALPA entered into a new Collective Bargaining Agreement on February 23, 1986."

EASTERN and ALPA have a long history of forming collective bargaining agreements in similar though not identical fashion. The Agreement is in writing, was ratified by the union and signed by the company. It is also undisputed that the parties acted on and operated under the Agreement. For example, the new wage rates were implemented on March 2, 1986 and are still in effect. Additionally, there is abundant evidence demonstrating that the parties objectively expressed the intent to form an agreement and to conclude negotiations. EASTERN's newsletter, "The Falcon," announced on March 5, 1986 that an agreement had been reached between the parties. On March 11, 1986 the National Mediation Board notified EASTERN and ALPA by letter that their file was being closed as "agreement had been reached" between the parties. EASTERN made no response to this letter. Throughout March of 1986 representatives of EASTERN conducted meetings around the country announcing that an agreement had been reached with the pilots. On April 23, 1986 EASTERN filed documents with the Department of Transportation alleging that a labor contract had been concluded. On June 10, 1986 EASTERN filed the complaint in this action which asserted that the parties were bound to a valid collective bargaining agreement. As late as November 1986 EASTERN represented in a proxy letter that it had "reached agreement with ALPA for a three-year labor agreement."

Accordingly, the court concludes, as in *Continental Can,* that "the company's final offer, and the union's acceptance" bear

all the outward indicia of a valid contract. Nothing in the document indicates that the Agreement was not to be binding until it was formalized in a typewritten or printed form. Manifestation of assent to the terms reached by offer and acceptance is controlling, regardless of whether either party refuses to sign a later written draft.

Furthermore, the fact that the parties exchanged drafts of the provisions to be included in the Agreement or that there are provisions which may be difficult to construe does not compel the conclusion that there was no meeting of the minds. *Benjamin Foster Co. v. Commonwealth*, 318 Mass. 190, 61 N.E.2d 147 (1945). *See also Blackhawk Heating & Plumbing Co. v. Data Lease Financial Corp.*, 302 So.2d 404 (Fla.1974). As the court noted in *Continental Can:*

> However, the fact that differences subsequently arise between the parties as to the construction of the contract ... is not of itself sufficient to affect the validity of the original contract or to show that the minds of the parties did not meet with respect thereto. The fact that an executed written contract contains within itself difficulties of construction about which the parties disagree does not enable a party to contend that the minds never met. [citations omitted]

Of compelling importance also is the very strong national policy in favor of arbitration of labor disputes. *See United Steelworkers of America v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

■ EASTERN's allegation that ALPA's actions constitute an attempt to change the rates of compensation is without merit. The pay parity provision of the valid collective bargaining agreement expressly provides for ALPA pilots to receive salary increases commensurate with across-the-board increases received by other employee groups. ALPA's grievance alleges that such an increase was received by a group of machinist supervisors. It is beyond dispute that ALPA's grievance simply seeks a non-frivolous interpretation of the rates of pay provided for in the agreement and in no way seeks to change those rates. Accordingly, the grievance is not beyond the scope of the System Board's jurisdiction and is a classic "minor dispute" under the RLA. *See, e.g., St. Louis Southwestern Ry. v. United Transp. Union*, 646 F.2d 230 (5th Cir.1981).

In conclusion, the parties entered into a valid and binding collective bargaining agreement in February 1986. The subsequent disagreement over the meaning of the terms does not compel the conclusion that there was no accord by the parties as to what they had agreed upon. The court reaches this conclusion after due consideration of the facts, including the collective bargaining history of the parties, as well as the subsequent conduct of the parties. The submission by ALPA of the grievance over the pay parity provision was not an attempt to alter or change existing rates of pay. Under the grievance procedure established in accordance with Section 204 of the RLA, 45 U.S.C. § 184, the System Board has jurisdiction over disputes "growing out of grievances or out of the interpretation or application" of a collective bargaining agreement.

Accordingly, it is ORDERED AND ADJUDGED as follows:

1. The Motion for Summary Judgment filed by EASTERN is hereby DENIED.

2. The Motion for Summary Judgment filed by ALPA is hereby GRANTED.

3. EASTERN's complaint and amendments thereto are dismissed.

4. Judgment is hereby entered in favor of ALPA on paragraph 2 of its counterclaim, to the extent that this court finds that a valid, enforceable collective bargaining agreement governs the conduct of the parties. Therefore, all disputes arising thereunder are subject to the jurisdiction of the System Board of Adjustment.

5. All other requests and prayers for relief sought in the counterclaim are DENIED.