**INDEPENDENT UNION OF FLIGHT ATTENDANTS, Plaintiff,**

v.

**PAN AMERICAN WORLD AIRWAYS, INC., Defendant.**

**No. 85 CV 2112.**

United States District Court, E.D. New York.

July 10, 1985.

Henning, Walsh & Ritchie by John F. Henning, and James R. Ritchie, San Francisco, Cal., Robb & Kuhns by Scott Robb, New York City, for plaintiff.

Ernest L. Garb, and Richard Schoolman, Pan American World Airways, Inc., Morgan, Lewis & Bockius by Harry A. Rissetto and Thomas E. Reinert, New York City, for defendant.

### MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

This is an action under the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.* Plaintiff union seeks a preliminary injunction ordering Pan American World Airways, Inc. ("Pan Am") to observe certain provisions of an April 1, 1985 agreement, or in the alternative, to maintain the status quo as it existed on or about April 1.

#### *Findings of Fact*

The Independent Union of Flight Attendants ("IUFA") and Pan Am have been parties to a series of collective bargaining agreements governing the "rates of pay,

rules and working conditions" of flight attendants represented by the IUFA. This action arises from the parties' efforts to negotiate a successor collective bargaining agreement to the 1982 Agreement, as extended, which expired by its terms on December 31, 1984. During 1984, the parties served notices of intended changes in the agreement pursuant to Section 6 of the RLA, 45 U.S.C. § 156, and initiated negotiations and, ultimately, mediation under the auspices of the National Mediation Board ("NMB").

On March 1, 1985, the NMB informed the parties that its mediatory efforts had failed, and released the parties to engage in self-help upon expiration of a thirty-day cooling-off period, *i.e.*, as of April 1, 1985 at 12:01 a.m. 45 U.S.C. § 155, First. (This cooling-off period was subsequently extended by the parties until approximately 3:30 a.m.) During the cooling-off period, the parties continued their discussions under the auspices of the NMB, and at the last moment arrived at what appeared to be an agreement.

On April 1, 1985, the parties executed a brief "Memorandum of Understanding" which provided that:

(1) IUFA and Pan Am have agreed to the proposal of Pan Am to IUFA dated March 31, 1985, as amended during the course of negotiations on March 31 and April 1, and by the IUFA proposal of March 31, 1985, as amended.

. . . .

IUFA Exhibit A.

The very next day, a dispute flared as to whether the 1985 Agreement included a promise by the union to drop certain pending lawsuits and grievances. *See* DeGeer Declaration at 3. Pan Am insists that such a provision was included in its proposals throughout bargaining for the 1985 Agreement, and was never withdrawn from the table. Thus, Pan Am included such a provision as "Item 7" in the formal, integrated version of the Agreement that it sent to the IUFA on April 4, 1985. IUFA Exhibit B.

The IUFA contends, however, that Item 7 was specifically excluded from the 1985

Agreement. *See* DeGeer Declaration at 4. Thus, in subsequent meetings with Pan Am, the IUFA refused to endorse Item 7 of the Agreement, contending all the while, however, that the remainder of the Agreement is valid and binding on the parties.

On April 12, 1985, the union filed an interpretation request with the NMB (45 U.S.C. § 155, Second) thereby invoking the jurisdiction of the NMB to determine whether "Item 7" was or was not part of the 1985 Agreement. The NMB conducted an evidentiary hearing on April 22, 1985, followed by a briefing schedule that was completed on May 31, 1985. The parties currently await the Board's decision.

The April Memorandum of Understanding provides that the parties have "reached a collective bargaining agreement subject only to ratification," IUFA Exhibit A, and that the IUFA "will establish a schedule for ratification that will result in a completion of the ratification process within 30 days after receipt of an integrated memorandum of understanding," *id.* To date, the IUFA has not submitted the Agreement to ratification.

Pan Am takes the position that, having exhausted the RLA procedures and pending IUFA ratification of the 1985 Agreement, the company is free to pursue its right of self-help. Consequently, Pan Am has chosen to implement its final proposal as accepted by the IUFA on April 1, with certain exceptions, notably, that the Company has elected (a) not to institute a new defined contribution pension plan, (b) not to grant a July 1, 1985 wage increase, and (c) not to pay for approximately 700 hours per month of release time for union business.

The union has responded by instituting this action for declaratory and injunctive relief, alleging that Pan Am has unlawfully (1) failed to make and maintain the 1985 Agreement, 45 U.S.C. § 152, First, (2) bargained in bad faith, *id.*, (3) exercised self-help, 45 U.S.C. §§ 152, First and Seventh, and 156, (4) interfered with the union's representation rights, 45 U.S.C. § 152, Third and Fourth, and (5) retaliated against

the exercise of the union's statutory right to invoke the jurisdiction of the NMB, 45 U.S.C. § 155, Second. Specifically, the union seeks an injunction requiring Pan Am to implement each and every provision of the 1985 Agreement, except Item 7, or in the alternative, requiring Pan Am to maintain the *status quo* as it existed on or shortly after April 1, 1985.

### Discussion

In this Circuit, a party seeking preliminary injunctive relief must show "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979). *Cf. Local 553, TWU v. Eastern Air Lines, Inc.*, 695 F.2d 668, 677 (2d Cir. 1982).

In assessing the likelihood that the union will succeed on the merits of its case, this Court is placed in the awkward posture of adjudging the rights of the parties under an agreement, the validity of which is presently being determined by the NMB. The IUFA argues that even if the NMB eventually holds that there is no agreement between the parties, the union is entitled to relief since Pan Am has unlawfully altered the status quo. I disagree.

There is no question that on April 1, 1985, both parties exhausted the statutory procedures. Accordingly, in the absence of an agreement, they could legally engage in self-help. *See Brotherhood of Railway and Steamship Clerks, Etc. v. Florida East Coast Railway Company*, 384 U.S. 238, 244, 86 S.Ct. 1420, 1423, 16 L.Ed.2d 501 (1966); *Brotherhood of Locomotive Engineers v. Baltimore & Ohio Railroad*, 372 U.S. 284, 291, 83 S.Ct. 691, 695, 9 L.Ed.2d 759 (1963). The union reads *Florida East Coast Railway Company* for the

narrower proposition that Pan Am may exercise self-help only to the extent it is "reasonably necessary" to the operation of the airline and only if the airline obtains prior judicial approval. I reject so strict an interpretation.

In *Florida East Coast Railway Company*, the Supreme Court dealt with carrier-imposed changes that had not "run the same gantlet of negotiation and mediation" as the proposed changes over which the statutory bargaining procedures had been exhausted. As to the former, the Court held that, in the interest of insuring the continuity of public transportation service, certain restrictions would be placed on the carrier's right to self-help. 384 U.S. at 248, 86 S.Ct. at 1425. As to the latter, however, the Court reaffirmed the parties' right to engage in self-help, including the union's right to strike, over proposed changes that have proceeded through the RLA procedures. *Id.* at 244, 86 S.Ct. at 1423.

Any other interpretation would destroy the legitimate role the self-help provision plays in the RLA scheme, *i.e.*, "to allow parties who have unsuccessfully exhausted the Railway Labor Act's procedures for resolution of a major dispute to employ the full range of whatever peaceful economic power they can muster, so long as its use conflicts with no other obligation imposed by federal law." *Brotherhood of Railroad Trainmen v. Jacksonville Terminal Co.*, 394 U.S. 369, 392–93, 89 S.Ct. 1109, 1123–24, 22 L.Ed.2d 344 (1969). Thus, because the changes that are the subject of this dispute have proceeded through the bargaining procedure, it seems clear that Pan Am may lawfully implement those changes pursuant to its right to engage in economic self-help.

The union argues, in the alternative, that Pan Am has no right to self-help because an agreement *was* reached by the parties on April 1, 1985. Pursuing this argument, the union then characterizes Pan Am's actions as a major dispute under the RLA.[1]

---

1. The union also argues that Pan Am bargained in bad faith, failed to uphold its statutory obligation to "maintain" the 1985 Agreement, and

did all this to undermine the union's status and to punish its members for challenging Item 7 of the Agreement. Upon hearing the testimony

In essence, the union's position is that the mere signing of the April 1 document notwithstanding the lack of consensus over its terms, elevates the document into an "Agreement" and that any dispute over the terms of the April Agreement sets the machinery of the RLA in motion all over again. Such an extravagant interpretation would delay indefinitely the company's right to self-help and "would result in an endless revolving door process." *REA Express, Inc. v. Brotherhood of Railway, Airline and Steamship Clerks,* 358 F.Supp. 760, 770 (S.D.N.Y.1973). *Cf. Pan American World Airways, Inc. v. Flight Engineers' International Ass'n,* 306 F.2d 840, 847 (2d Cir.1962). If there is no agreement upon all the terms, there is no "Agreement."

It is, therefore, not at all clear to this Court that the parties have, in fact, reached an agreement. As a practical matter, the union's claims should not be adjudicated until the NMB has issued a definitive ruling on the bedrock question: is there an agreement? Clearly, Congress intended disputes concerning interpretation of mediated agreements to lie within the jurisdiction of the NMB. *Cf. Brotherhood of Locomotive Engineers v. Missouri-Kansas-Texas Railroad Co.,* 320 U.S. 323, 332 n. 7, 64 S.Ct. 146, 150 n. 7, 88 L.Ed. 76 (1943). Judicial review of the IUFA's claims is not proper at this time.

The union argues, however, that an injunction by this Court is necessary to "preserve the jurisdiction of the NMB" since, without it, the union members will suffer irreparable harm. Upon reviewing the record in its entirety, however, I am not persuaded that the union has proven it will suffer irreparable harm.[2] Clearly, any claims its members might have for lost wages, pension benefits, etc., are purely economic and easily calculated. Thus, if Pan Am's actions are later held improper, the union and its members could seek redress through normal grievance procedures and could be compensated for their loss through retroactive payments. *See Local 553, TWU v. Eastern Air Lines, Inc.,* 695 F.2d 668, 678 (2d Cir.1982).

In contrast, Pan Am would suffer considerable harm if injunctive relief were issued, since it would be forced to make payments under the 1985 Agreement which, as a practical matter, could not be recovered if the Agreement ultimately is not ratified. Moreover, the administrative and funding costs to Pan Am of establishing a new pension plan, that may or may not be ratified, would be prohibitive. Although the Court is certainly sympathetic to the frustrations of the rank-and-file, who have not even been presented with the Agreement for ratification, the conclusion is nonetheless inescapable that the balance of hardships tilts toward Pan Am.

---

and reviewing the evidence in its entirety, however, I am not persuaded that the union is likely to succeed in proving that Pan Am acted in bad faith or with some illegal purpose. To the contrary, it is clear that both sides simply continue to engage in robust, bare-knuckled bargaining, as is evident from the union's attorney's comments at the hearing:

> There will be new and different proposals as the days and months go on and Item Seven still is out. The price has gone up. All of this is in the nature of settlement discussions on buying back Item Seven.... We have ... upped the price for Item Seven. It is ours now. They want it, they've got to buy it back. The price is going to get stiffer and stiffer each day. That's our side. We're entitled to settle. It is ours.

• (Tr. at 140). Clearly, "a party does not violate its duty under the Act if it chooses to be adamant in its position." *REA Express, Inc. v.*

*Brotherhood of Railway, Airline and Steamship Clerks,* 358 F.Supp. 760, 772 n. 43 (S.D.N.Y. 1973).

**2.** The IUFA also contends that no showing of irreparable harm is necessary before enjoining a carrier in a major dispute. *Local 553, Transport Workers Union v. Eastern Air Lines, Inc.,* 695 F.2d 668, 677 (2d Cir.1983). As the Second Circuit noted in *Local 553,* however, where, as here, the Court is presented with a motion for a preliminary rather than a final injunction, "there is no doubt that a finding of irreparable harm [is] necessary." *Id.*

Alternatively, the union suggests that the Court may avoid a finding of irreparable harm by treating this as a motion for summary judgment. There exist, however, several material questions of fact regarding the agreement, if any, reached by the parties which preclude such relief at this time.

Accordingly, the motion for a preliminary injunction is denied, and the action is stayed pending a determination from the NMB.

SO ORDERED.