**INDEPENDENT UNION OF FLIGHT ATTENDANTS, Plaintiff,**

v.

**PAN AMERICAN WORLD AIRWAYS, INC., Defendant.**

**No. 85 CV 0031.**

United States District Court,
E.D. New York.

Jan. 16, 1986.

Henning, Walsh & Ritchie, San Francisco, Cal. (James R. Ritchie, of counsel), for plaintiff.

Ernest L. Garb, Richard Schoolman, Pan American World Airways, Inc., New York City (Morgan, Lewis & Bockius, Washington, D.C., Harry A. Rissetto, Thomas E. Reinert, Robert D. Manfred, Jr., of counsel), for defendant.

## MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

This is another in a series of disputes between the Independent Union of Flight Attendants ("IUFA") and Pan Am arising from the parties' efforts to negotiate a successor collective bargaining agreement following the expiration of the previous agreement on December 31, 1984.

On October 4, 1985, the IUFA filed a motion for supplementary relief requesting that this Court enter a final order declaring the rights and obligations of the parties regarding the payment of wages pursuant to the Court's February 6, 1985 Judgment. In turn, Pan Am has filed a motion for relief from that judgment. Fed.R.Civ.P. 60(b). For the reasons developed below, Pan Am's motion is granted and the action is dismissed.

### Facts

The chronology of events in this case is summarized as follows:

On February 6, 1985, this Court entered a Judgment which required that Pan Am maintain the wage rates set forth in the March 31, 1982 collective bargaining agreement (the "snapback rates") as the *status quo* pursuant to Section 6 of the Railway Labor Act, 45 U.S.C. § 156. The judgment was made retroactive to January 1, 1985, and was operative through April 1, 1985, at which point the parties reached a new collective bargaining agreement.

Beginning February 15, 1985, the IUFA flight attendants who reported to work were paid pursuant to this Court's Order. However, as of late March 1985, Pan Am had not made the retroactive payments for the period of January 1, 1985 to February 15, 1985. Accordingly, the IUFA sought to hold Pan Am in contempt of court. Based upon Pan Am's representation that the retroactive snapback compensation would be paid as soon as the clerical employees returned from strike, however, the Court declined to sign the IUFA's Order to Show Cause regarding contempt.

On or around April 1, 1985, the parties executed a "Memorandum of Understanding" regarding a new collective bargaining agreement. Almost immediately thereafter, and prior to ratification of the agreement, a dispute arose between the parties as to whether the new agreement included a promise by the union to drop certain specified lawsuits and grievances ("Item 7"). This action was listed in Item 7 as one of the cases to be withdrawn. *See* Plaintiff's Exhibit A.

The issue of the inclusion of Item 7 in the new agreement was litigated extensively before the National Mediation Board, 12 NMB No. 47 (1985), and before this Court, *Independent Union of Flight Attendants v. Pan American World Airways, Inc.*, 624 F.Supp. 64 (E.D.N.Y.1985). After the Court denied the union's request for injunctive relief and after the NMB declined to interpret the agreement, the IUFA agreed to submit the April Memorandum to its membership for ratification.

Accordingly, on July 31, 1985, the IUFA Executive Board sent the union members a packet that contained a ratification ballot and a letter explaining the ratification process.

On or about August 30, 1985, the IUFA membership ratified the April agreement, including Item 7.

### Discussion

■ Relying upon the Second Circuit's decision in *Nestle Company, Inc. v. Chester's Market, Inc., et al.*, 756 F.2d 280 (2d Cir.1985), Pan Am argues that the Court's February 6, 1985 Judgment should be vacated in order to effectuate the parties'

agreement, as set forth in Item 7. In *Nestle,* the Court held that the district court had abused its discretion in denying the parties' joint motion to vacate a partial judgment where the parties had reached a settlement while an appeal was pending. *Id.* at 284. The IUFA argues that *Nestle* is inapplicable, however, since the union does not concede that a "settlement" has been reached on the issue of the union's waiver of its rights to retroactive benefits. Accordingly, as a threshhold matter, this Court must decide the scope of Item 7.

Item 7 states in pertinent part that "the parties agreed that [certain specified] cases would be resolved by IUFA withdrawing either its grievance and/or court action and/or arbitration award...." This action was among the cases specified. Item 7 goes on to state that "upon ratification of the Agreement, IUFA and Pan Am will take whatever action necessary and permitted by law to withdraw the specified disputes."

Despite the express reference to this action in Item 7, the IUFA argues that it agreed only to withdraw its claims to "prospective" benefits, and not its "vested" right to retroactive benefits. Viewed in light of the circumstances in which it was drafted, however, Item 7 could only be interpreted to mean that the union agreed to give up that which it had won before this Court.

It must be remembered that the agreement as to Item 7 was reached on or about April 1, 1985. This Court's "snapback" Judgment set the rates of pay during the status quo period, *i.e.,* from January 1, 1985 to April 1, 1985. It did not—and could not—grant relief for the period commencing April 1, 1985. Thus, an agreement on or about April 1, 1985 to withdraw the snapback action could only be construed as an agreement by the union to relinquish the relief it had already won. Any other construction would lead to the conclusion that Pan Am bargained for an "empty bag."

Moreover, the IUFA's interpretation of Item 7 is belied by statements contained in certain union documents. First, the letter that the IUFA sent its members as part of the ratification packet explained the agreement as follows:

> If we vote to ratify Pan Am's offer, we will be agreeing to withdraw the following grievances and/or court actions and/or arbitration awards, which are specified in the offer as "Item 7":
>
> (1) *"Snapback"*
> Court action won and
> grievance pending to
> force Pan Am to
> return to book rates
> of pay and working
> conditions as of
> January, 1985,
> following the
> expiration of the
> Productivity
> Agreement;
>
> . . . .

*See* Defendant's Exhibit 1. .

Moreover, an IUFA newsletter published shortly after ratification contains the following notice:

> As a result of ratification, our claims to snapback pay have been given up (to the extent the law will allow).

*See* IUFA Newsletter dated September/October 1985 at 4.

Accordingly, I find that, during the give and take of collective bargaining, the parties agreed to withdraw this litigation and to vacate the Court's prior judgment.

■ Notwithstanding this agreement, however, the IUFA argues that Pan Am is equitably estopped from denying retroactive compensation based upon its representations to the union and to this Court that the payments would be forthcoming as soon as the clerical employees returned to work. This argument might be persuasive if Pan Am's representations were made *after* the April agreement. In fact, however, the representations were made in March 1985, *prior* to the parties' agreement. Thus, this Court is left with but one

conclusion—that the union's rights as to those payments were bargained away.

It is by now well-established that the purpose of the Railway Labor Act is to encourage the voluntary settlement of disputes. *See Airline Pilots Association v. Pan American World Airways, Inc.,* 765 F.2d 377, 381–2 (2d Cir.1985). Thus, in light of the parties' agreement, Pan Am's motion pursuant to Rule 60(b) is granted. The Court's Judgment dated February 6, 1985 is hereby vacated and the complaint is dismissed.

SO ORDERED.