**In re COLIN, HOCHSTIN CO., Debtor.**

**Bankruptcy No. 83 B 10794 (JJG).**

United States Bankruptcy Court,
S.D. New York.

July 27, 1984.

Milbank, Tweed, Hadley & McCloy, New York City, for New York Stock Exchange; Russell E. Brooks, Paul T. Shoemaker, New York City, of counsel.

Garrity, Connolly, Lewis, Lowry & Grimes, New York City, for Colin, Hochstin Co., debtor; William R. Grimes, Robert C. Reichelscheimer, New York City, of counsel.

Burns, Summit, Rovins & Feldesman, Shea & Gould, New York City, for Justin Colin; Asher B. Lans, Herman A. Bursky, New York City, of counsel.

Kaye, Scholer, Fierman, Hays & Handler, New York City, for Creditors Committee in *In re Justin Colin*, 82 B 11541; Stanley T. Lesser, New York City, of counsel.

## MEMORANDUM AND DECISION

HOWARD C. BUSCHMAN, III, Bankruptcy Judge.

The Debtor, Colin Hochstin Co. ("CHC"), has moved for an order declaring that the New York Stock Exchange ("NYSE" or the "Exchange") and its enforcement division are subject to the automatic stay which became operative immediately upon the May 1983 filing by Justin Colin of an involuntary Chapter 11 petition against his former brokerage firm, CHC. The NYSE has opposed that motion and cross-moved for an order (a) declaring that the investigation of CHC by the Exchange is not subject to the automatic stay, or (b) declaring that the investigation is exempted from such a stay, or (c) lifting any such stay for cause. Upon review of these motions and finding that the NYSE has shown sufficient cause,

we find that the stay should be modified pursuant to § 362(d)(1) of the Bankruptcy Code. 11 U.S.C. § 362(d)(1).

### I

In May 1982, a voluntary chapter 11 petition was filed, pursuant to § 301 of the Bankruptcy Code (11 U.S.C. § 301), by Justin Colin, a member of CHC, a New York brokerage firm. Later that year, the NYSE, in accordance with its duties under § 78f(d) of the Securities Exchange Act of 1934 ("the 1934 Act"), notified CHC that the enforcement division of the Exchange was investigating the conduct and affairs of certain past and present members of CHC for possible violations of the Rules of the Exchange.[1] Subsequently, in May 1983, Colin filed an involuntary petition against CHC under 11 U.S.C. § 303, whereupon CHC informed the NYSE of the chapter 11 proceeding and hence, the operative stay. Nevertheless, the Exchange continued with its investigation until that investigation was stayed by order of Bankruptcy Judge John J. Galgay of this Court pending determination of CHC's motion.[2]

### II

By virtue of the May, 1983 involuntary Chapter 11 petition filed against CHC, an automatic stay, as set forth in 11 U.S.C. § 362(a), became immediately effective. That section provides, in part,

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302 or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investment Protection Act of 1970 (15 U.S.C. 78eee(a)(e)), operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment

---

**1.** The "investigation is focusing upon possible violations of those Exchange rules which prohibit the guaranteeing of an account by an account owned by a partner in a member firm, and which govern record-keeping, control of securities, and other matters." *See*, Brief for NYSE, 2.

**2.** A plan of reorganization has recently been filed by the Creditors' Committee in the chapter 11 proceeding of Justin Colin. Pursuant to the "Colin, Hochstin Co. Dissolution Agreement" included in that plan, Colin would withdraw with prejudice the involuntary chapter 11 proceeding filed against CHC. This plan has only recently been distributed and has yet to be approved by either the parties in interest or this Court.

of process, of judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title ....

As one of "the fundamental debtor protections provided by the bankruptcy laws," HR Rep. No. 595, 9th Cong. 1st Session, 340 (1977) reprinted in [1978] U.S.Code Cong. & Ad.News 5787, 5963, 6296; *see also In re Saypol*, 31 B.R. 796, at 798 (Bankr.S.D.N.Y.1983), Congress expressly directed that the stay be expansively applied. *Id.* at 6296. Collier, accordingly, observes that:

> The stay of § 362 is extremely broad in scope and, aside from the limited exceptions of subsection (b), should apply to almost any type of formal or informal act against the debtor or property of the estate.

2 Collier on Bankruptcy, ¶ 362.03, 362–26 (15th ed., 1982).

Despite that breadth, the NYSE argues that it qualifies for one of the "limited exceptions" included in this section, namely § 362(b)(4) which exempts from the automatic stay

> "the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power ..." 11 U.S.C. § 362(b)

It is thus argued that the definition of "governmental unit" in § 101(21) of the Bankruptcy Code is broad enough to encompass the NYSE; i.e., the Exchange is "an instrumentality" of the United States which "is actually carrying out some governmental function." H.R.Rep. No. 95–595, 95th Cong. 1st Sess. 311 (1977) reprint-ed in [1978 U.S.Code Cong. & Ad.News 5963, 6268.

Like all national securities organizations, the NYSE has a duty, pursuant to the 1934 Act, to enforce its rules and regulations so as to protect investors and the general public from illegitimate or disorderly practice in the securities markets. 15 U.S.C. §§ 78f(b)(1), 78s(g).[3] As such, the Exchange has "frontline responsibility" for the regulation of its member-brokers, subject only to the supervision of the Securities and Exchange Commission. 15 U.S.C. § 78q(d) and 15 U.S.C. § 78s(g)(2); *see also, Silver v. New York Stock Exchange*, 373 U.S. 341, 352, 83 S.Ct. 1246, 1254, 10 L.Ed.2d 389 (1963).

■ Notwithstanding this "national public interest which makes it necessary to provide for regulation and control" of transactions in securities "as commonly conducted on the securities exchanges and over-the-counter markets," *see* 15 U.S.C. § 78b, the Exchange is not a governmental entity within the purview of § 362(b)(4) of the Code; thus, its investigation is not *per se* exempt from the automatic stay.

■ Congress intended for this section "to be given a narrow construction in order to permit governmental units to protect public health and safety ..." 124 Cong. Rec. H 11089 reprinted in 1978 U.S.Code Cong. & Ad.News 6436, 6444–6445; *In re Greenwald*, 34 B.R. 954, 957 (Bankr.S.D.N.Y.1983). Accordingly, the case law in this Circuit has constricted § 362(b)(4), *see Matter of IDH Realty*, 16 B.R. 55, 57 (Bankr.E.D.N.Y.1981) *quoting Matter of National Hosp. & Institutional Builders*, 658 F.2d 39 (2d Cir.1981); the exemption has been expressly limited to "actual governmental

---

**3.** 15 U.S.C. § 78f(b)(1) provides:

"b) An exchange shall not be registered as a national securities exchange unless the Commission determines that—

(1) Such exchange is so organized and has the capacity to be able to carry out the purposes of this chapter and to comply ... and to enforce compliance by its members and persons associated with its memers, with the provisions of this chapter, the rules and regulations thereunder, and the rules of the exchange."

15 U.S.C. § 78s(g) provides, in part:

"(g)(1) Every self-regulatory organization shall comply with the provisions of this chapter, the rules and regulations thereunder, and its own rules, and absent reasonable justification or excuse enforce compliance—

(A) in the case of a national securities exchange, with such provisions by its members and persons associated with its members ...."

groups and not organizations acting in a governmental capacity." *In re Revere Copper and Brass, Inc.*, 32 B.R. 725, 727 (D.C.S.D.N.Y.1983); *In re Lawson Burich Associates, Inc.*, 31 B.R. 604, 611 (D.C.S.D. N.Y.1983).

Furthermore, the cases relied on by the Exchange involve not a registered exchange, but two governmental commissions: the Commodity Futures Trading Commission ("CFTC") and the Securities and Exchange Commission ("SEC"). *See, Securities and Exch. Comm. v. First Financial Group of Texas*, 645 F.2d 429 (5th Cir.1981) (SEC civil enforcement proceeding not stayed and qualified for a § 362(b)(4) exemption); *Commodity Futures Trading Comm. v. Incomco, Inc.*, 649 F.2d 128 (2d Cir.1981) (the § 362(b)(4) exception is applicable to regulatory proceedings brought by the CFTC). While the NYSE coordinates extensively with the SEC and, in addition, has the statutorily-mandated duty to regulate its members, the Exchange remains a private organization chartered by the State of New York, whose very existence pre-dates the 1934 Act. Accordingly, case law pertaining to the CFTC and the SEC is inapposite.

Given the clearly expressed intentions of Congress to interpret § 362(b)(4) narrowly and the recent opinions of this Circuit affirming those Congressional directives, it is thus apparent that the NYSE does not qualify for the § 362(b)(4) exemption from the automatic stay, and we so conclude.

### III

■ That conclusion is supported by significant policy concerns focusing on the dual purposes of the automatic stay in bankruptcy proceedings: (a) to provide the debtor with a respite, "a breathing spell," that enables the debtor to recapture his bearings adjusting to the trauma which accompanies the filing of a petition in bankruptcy, and (b) to assemble all the creditors and their claims into the bankruptcy court for a single organized proceeding. *See,* H.R.Rep. No. 95–595, 95th Cong., 1st Sess., 174 *reprinted in* [1978] U.S.Code Cong. &

Ad.News 5963, 6135, *In re Saypol*, 31 B.R. 796, at 798–799 (Bankr.S.D.N.Y.1983). Here, we are primarily concerned with the "respite" function of the automatic stay.

While posing no threat to the assets or property of CHC, the NYSE's investigation represents precisely the sort of pressure from which the Code seeks initially to relieve the debtor upon its entry into bankruptcy. Absent a plenary respite, including relief from even minor harrassments such as a NYSE investigation, debtors are unable fully to concentrate upon the task before them, namely, regenerating the necessary capacity to address bankruptcy in a responsible and effective manner.

■ But it is these very policy concerns that indicate that the stay is not to remain in place indefinitely and may be vacated or modified for cause pursuant to § 362(d)(1) of the Code when the balance of competing interests shifts as the case proceeds. Accordingly, Collier notes that:

> The rationale for the automatic stay is to protect the debtor, to permit effective administration and to protect creditors against prejudicial dismemberment and disposition of the estate. That being the case, it is clear that the stay should be terminated when it becomes obvious that no harm would result to the estate or debtor by reason of a suit against the debtor, foreclosure of a lien against some or all of the estate's property or any other type of activity.

2 *Collier on Bankruptcy* ¶ 362.06 at 362–29 (15th ed. 1982).

■ Here, the balance has shifted from emphasis on the respite necessary at the commencement of a bankruptcy case to recognition of the purposes of industry self-regulation through registered exchanges as codified in the 1934 Act. *See,* 15 U.S.C. § 78f(b). Primary among the tools of self-regulation is the duty and responsibility imposed on registered exchanges to discipline member firms and those persons associated with them for any violation of the Exchange's rules or viola-

tion of the securities laws.[4] *See Silver v. New York Stock Exchange*, 373 U.S. 341, 353, 83 S.Ct. 1246, 1255, 10 L.Ed.2d 389 (1963). Investigations such as the one in question here are a necessary first step so that the Exchange can become fully aware of the practices—proper and improper—which are extant in the securities industry so that it can fulfill its Congressionally mandated regulatory responsibilities.[5] *See*, Brief for NYSE, 3.

Since, moreover, at least eight former members of CHC are currently employed by member firms, the public interest merits special attention in this case. Should any of these brokers have engaged in wrongdoing while employed at CHC, it is imperative that the NYSE be informed of such actions so that it may consider whether sanctions should be imposed upon them, including precluding such persons from affiliation with an Exchange member. See note 4, *supra*. Customer protection and the integrity of the Exchange and its member firms counsels nothing less than permitting it to pursue its investigation expeditiously.[6]

In contrast, at this point over a year after the filing of the involuntary petition, the "respite" function of the automatic stay has assumed less significance. Although an order for relief has yet to be entered in this involuntary proceeding, that delay is not attributable to NYSE. The parties have repeatedly adjourned the hearing as to the propriety of the involuntary petition and whether an order for relief should be entered pursuant to § 303 of the Code, and, have repeatedly assured the Court that they are close to settlement, so that the issue need not be resolved. The sharp public interest advanced by the Exchange and the need for self-regulation of the securities industry should not be delayed by the consent of others. This debtor, no longer operating, has had more than a sufficient respite and the purpose of the stay with respect to this NYSE investigation was long ago fulfilled.

The public interest in the continued orderly and legitimate self-regulation of the securities industry through Exchange investigation, as commanded by statute, far outweighs any further purpose to be achieved by retention of the automatic stay at this stage of this proceedings and commands its modification to permit the investigation by the Exchange of former and present members of Colin, Hochstin Co. to proceed. The motion by CHC should be denied. The cross-motion by NYSE should be granted and the automatic stay modified to permit the investigation to proceed.

Settle Order.

---

**4.** Section 6(b)(6) of the 1934 Act provides:

(b) The exchange shall not be registered as a national securities exchange unless the Commission determines that—

(6) The rules of the exchange provide that ... its members and persons associated with its members shall be appropriately disciplined for violations of the provisions of this chapter, the rules or regulations thereunder, or the rules of the exchange, by expulsion, suspension, limitation of activities, functions and operations, fine, censure, being suspended or barred from being associated with a member, or any other fitting sanction.

15 U.S.C. § 78f(b)(6).

**5.** Likewise, the SEC retains the power to "make such investigations it deems necessary to determine whether any person has violated or is about to violate any provision of this title." 15 U.S.C. § 78u(a). Counsel for the debtor avers that the SEC's ongoing investigation of Justin Colin overlaps with the NYSE investigation, and thus, the latter's inquiries are superfluous. We disagree. As was proposed by counsel for the Exchange at the hearing on this matter, the NYSE has no interest in performing excess work. Should the enforcement division find that its investigation is no longer needed given the pervasiveness of the ongoing SEC investigation, it will abandon any such project. However, that determination should be made by the NYSE itself and this Court need only provide it with the requisite freedom to so decide. Further, while the SEC may relieve the NYSE of its responsibility to enforce compliance with its rules and regulations pursuant to 15 U.S.C. § 78s(g)(2), the SEC has not done so here.

**6.** Counsel for the debtor makes fleeting reference in its brief to the expense of the investigation. Not only did CHC assume the responsibility to participate in such an investigation when it became a member firm of the NYSE, but such concerns are not paramount to the public interest involved here.