In re IONOSPHERE CLUBS, INC. and Eastern Air Lines, Inc., Debtors.

AIR LINE PILOTS ASSOCIATION, INTERNATIONAL, Movant,

v.

EASTERN AIR LINES, INC., Respondent.

Bankruptcy Nos. 89 B 10448, 89 B 10449.

United States Bankruptcy Court, S.D. New York.

Aug. 2, 1989.

Weil, Gotshal & Manges, New York City, by Bruce R. Zirinsky, of counsel.

Akin, Gump, Strauss, Hauer, & Feld by David Callet, of counsel.

Kramer, Levin, Nessen, Kamin & Frankel by Kenneth Eckstein and Adam Harris, of counsel, New York City, for Official Creditors' Committee.

Cohen Weiss and Simon by James L. Linsey, Russell Hollander and Richard Seltzer, of counsel, New York City, for Airline Pilots Ass'n.

## MEMORANDUM DECISION ON MOTION OF AIR LINES PILOTS ASSOCIATION, INTERNATIONAL FOR RELIEF FROM THE AUTOMATIC STAY

BURTON R. LIFLAND, Chief Judge.

### RELIEF REQUESTED

The Air Line Pilots Association International ("ALPA") requests the entry of an order pursuant to 11 U.S.C. § 362(d) lifting the automatic stay to allow the Eastern Air Lines, Inc./ALPA System Board of Adjustment to complete its arbitration proceedings in Eastern/ALPA Case No. 4–86 and to continue arbitration hearings in Eastern/ALPA Case Nos. 5–86 and 156–87.

### BACKGROUND

On March 9, 1989, Eastern Air Lines, Inc. ("Eastern") and its affiliate, Ionosphere Clubs, Inc. ("Ionosphere"), filed for relief under Chapter 11 of the Bankruptcy Code, (the "Code"). 11 U.S.C. § 101 et seq. (1978).

ALPA is the authorized collective bargaining representative under the Railway Labor Act ("RLA"), 45 U.S.C. § 151 et seq., for all airline pilots employed by Eastern.

ALPA and Eastern have been parties to successive collective bargaining agreements for over forty-five years. The most recent ALPA–Eastern collective bargaining agreement is dated February 23, 1986, and became amendable (*i.e.*, subject to renegotiation) on July 1, 1988.

The 1986 ALPA–Eastern collective bargaining agreement contains a "pay-parity" provision. This provision provides: "Parity —With IAM, TWU, Non–Contract For General Across the Board Salary Increases Only." ALPA's motion is based on three grievances which grew out of ambiguous language of this provision. ALPA alleges that this provision guarantees Eastern pilots pay increases if Eastern grants salary increases to employees represented by the International Association of Machinists ("IAM"), the Transport Workers' Union ("TWU"), or non-contract, *i.e.*, non-union, employees. Alternately, Eastern purports that this provision only applies to across the board salary increases and is inapplicable to the limited pay raises to which ALPA refers.

Sections 29 and 30 of the 1986 ALPA–Eastern Agreement (ALPA Exhibit B) provide a procedure for the resolution of grievances. Those grievances which remain unresolved after informal conferences are submitted to the ALPA–Eastern System Board of Adjustment ("System Board") for arbitration, (pursuant to Section 29 of the 1986 Agreement, and the ALPA–Eastern System Board Agreement as provided in Section 204 of the RLA, 45 U.S.C. § 184).[1]

This System Board consists of four members, composed of two company members and two union members. In the event that the four members of the System Board are unable to reach agreement within 30 days from the final submission of a grievance, either party may notify the System Board that a fifth member of the System Board is desired. The System Board thereupon selects a neutral from the panel of 6 arbitrators (agreed to by both the parties) listed in the System Board Agreement.[2] The selected neutral member acts as the chairman of the five member board.

## THE GRIEVANCES

Shortly after the 1986 agreement was ratified, ALPA learned that Eastern granted 300 of its 18,375 "non-union" supervisors pay increases of varying percentages. ALPA believes that Eastern's failure to provide its pilots with similar increases violated the pay-parity provision of the Agreement. Accordingly, on May 27, 1986 ALPA filed a grievance protesting Eastern's violation of the pay-parity provision of the Agreement. Unable to achieve a satisfactory resolution of the grievance, ALPA submitted the grievance to the System Board. On June 16, 1986, Eastern filed an action in the U.S. District Court for the Southern District of Florida alleging that ALPA was attempting to change the existing rates of pay in violation of the parties' Agreement. Subsequent to its initial filing, Eastern amended its complaint on July 11, 1986 asserting that no valid collective

1. Section 29–B–6 of the 1986 Eastern/ALPA Agreement provides in relevant part as follows: When a ... pilot is dissatisfied with Eastern's decision, (concerning an investigation and hearing of the pilot) he shall have the right to appeal to the "Eastern Air Lines Pilot's System Board of Adjustment," as provided for in the "Agreement between Eastern Air Lines, Incorporated, and the Air Line Pilots in the service of Eastern Air Lines, Incorporated, as represented by the Air Line Pilots Association, International, covering the establishment and maintenance of a System Board of Adjustment," dated May 17, 1977....
Section 30A of the 1986 Eastern/ALPA Agreement provides as follows:
Any pilot or group of pilots hereunder who have a grievance concerning any action of Eastern affecting them shall be entitled to

have such grievance handled in accordance with Section 29 of this Agreement and Section 204, Title II of the Railway Labor Act, as amended....

2. The jurisdiction of the System Board, as provided in the agreement between the parties, is as follows:
[J]urisdiction over disputes between any employee covered by the Pilots' Agreement and Eastern growing out of grievances or out of interpretation or application of any of the terms of the Pilots' Agreement. The jurisdiction of the Board shall not extend to proposed changes in hours of employment, rates of compensation or working conditions covered by existing agreements between the parties hereto.

bargaining agreement existed between ALPA and Eastern.

The District Court rejected Eastern's contention. Instead, the Court held that ALPA and Eastern entered into a valid and binding collective bargaining agreement and ordered Eastern to submit the pay-parity grievance to arbitration before the System Board. *Eastern Air Lines, Inc. v. Air Line Pilots Ass'n, Int'l,* 670 F.Supp. 947, 953 (S.D.Fla.1987) *aff'd* 861 F.2d 1546 (11th Cir.1988). Subsequently, the matter proceeded to arbitration before the five member System Board. Two days of hearings were completed on January 24 and 25, 1989. At the conclusion of those hearings, the System Board scheduled three more days of hearings. Upon Eastern's Chapter 11 filing, those hearings were automatically stayed pursuant to § 362(a) of the Code. 11 U.S.C. § 362(a)[3].

In addition, ALPA filed two more grievances protesting three other salary increases to IAM workers. Unable to achieve a satisfactory resolution of the matters, ALPA submitted Case No. 5–86 to the System Board on September 8, 1986 and Case No. 156–87 to the System Board on December 8, 1987. Subsequently, each matter was submitted to a separate five member System Board. As with Case No. 4–86, Eastern refused to submit Case No. 5–86 to arbitration before the System Board. Eastern held ALPA's September 8, 1986 grievance in abeyance until after the U.S. District Court for the Southern District of Florida ruled. *See, Eastern Airlines, Inc.,* 670 F.Supp. at 947. It should be noted that an award, if any, in favor of ALPA based upon the three arbitration proceedings could range from zero to $250 million.

## ISSUE

Whether ALPA has shown cause to lift the automatic stay pursuant to § 362(d) of the Code.

---

**3.** Section 362(a) provides, in pertinent part as follows:
(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302 or 303 of this title, ... operates as a stay, applicable to all entities, of
(1) the commencement or continuation, including the issuance or employment of pro-

## DISCUSSION

Section 362(a)(1) of the Code provides for an automatic stay which springs into effect upon the filing of a petition for reorganization. In short, the stay halts the continuation of judicial and other actions, proceedings or claims that were commenced against the debtor prior to the bankruptcy filing. The automatic stay prevents creditors from reaching the assets of the debtor's estate piecemeal and preserves the debtor's estate so that all creditors and their claims can be assembled in the bankruptcy court for a single organized proceeding. *In re Colin, Hochstin Co.,* 41 B.R. 322, 324 (Bankr.S.D.N.Y.1984). Thus, upon the Eastern bankruptcy filing, ALPA's grievances from 1986 were prevented from continuing and proceeding to arbitration as a result of the automatic stay.

■ However, the stay may be lifted "for cause" pursuant to § 362(d), which provides in relevant part:

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay ...

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest....

11 U.S.C. § 362(d).

In the present situation, the automatic stay should be lifted and the grievances submitted to the System Board. This decision was reached after a careful consideration of the special circumstances before the Court.

■ Where special circumstances exist, bankruptcy courts have upheld the federal policy favoring labor arbitration and in specific situations have modified the automatic

---

cess, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title ...

11 U.S.C. § 362(a)(1).

stay to allow arbitrators to exercise their special expertise. *See e.g., Garland Coal & Mining Co. v. United Mine Workers,* 778 F.2d 1297 (8th Cir.1985); *L.O. Koven & Brother, Inc. v. United Steelworkers Of Am.,* 381 F.2d 196 (3d Cir.1967); *In re Allen & Hein, Inc.,* 59 B.R. 733 (Bankr.S. D.Cal.1986); *In re Midwest Emery Freight System Mining Co., Inc.,* 48 B.R. 566 (Bankr.N.D.Ill.1985); *In re Sterling Mining Co., Inc.,* 21 B.R. 66 (Bankr.W.D.Va. 1982); *In re Smith Jones, Inc.,* 17 B.R. 126 (D.Minn.1981); *In re Penn Fruit Co.,* 1 B.R. 714 (Bankr.E.D.Pa.1979). In determining whether to submit the grievance to arbitration, a bankruptcy court must consider the impact of the arbitration on the estate. The court should consider, *inter alia,* "whether arbitration will preserve labor peace, bring to bear the expertise of the arbitrator on issues such as working conditions or shop practices, and at the same time, avoid usurpation of the bankruptcy court's critical role in the reorganization proceedings." *Bohack Corp. v. Truck Drivers Local Union No. 807 ("Bohack I"),* 431 F.Supp. 646, 653 (E.D.N.Y.), *aff'd mem.,* 567 F.2d 237 (2d Cir.1977), *cert. denied,* 439 U.S. 825, 99 S.Ct. 95, 58 L.Ed.2d 117 (1978). As has been recognized by both parties to the motion, modification of the stay under the circumstances presented here is committed to the sound discretion of the court. *Bohack I,* 431 F.Supp. at 653; *Zimmerman v. Continental Airlines, Inc.,* 712 F.2d 55, 56 (3d Cir. 1983); *In re Allen & Hein, Inc.,* 59 B.R. 733, 734 (Bankr.S.D.Cal.1986). Based upon the record before this Court, it does not appear that the current arbitration proceeding will interfere with the bankruptcy court's critical role in the reorganization process.

Of primary concern to this Court is the ability of the Official Unsecured Creditor's Committee (the "Creditors' Committee") to participate in the arbitration proceedings. In *Johnson v. England,* 356 F.2d 44, 51 (9th Cir.1966) *cert. denied,* 384 U.S. 961, 86 S.Ct. 1587, 16 L.Ed.2d 673 (1966), the Ninth Circuit, for example, stated a similar concern and held that where "[a] decision of an arbitrator ... would involve interests of parties who never consented to arbitration, namely ... the general creditors, ... [the creditors] ought not to be bound by the decision of an arbitrator selected by the employer and the union." *Johnson v. England,* 356 F.2d at 51; *see also, Truck Drivers Local Union No. 807 v. Bohack Corp.,* 541 F.2d 312 (2d Cir.1976) *cert. denied,* 439 U.S. 825, 99 S.Ct. 95, 58 L.Ed.2d 117 (1978). In fact, both Eastern and the Creditors' Committee argue that if creditors' interests would be adversely affected by the proceedings, this Court has discretion not to modify the stay to permit the issues to be submitted to arbitration.

Consequently, this Court made inquiry at the hearing not only as to whether ALPA would consent to the Creditors' Committee active participation in the arbitration proceedings but also as to the binding nature of such consent on the arbitrators. In response, ALPA submitted its "Supplemental Declaration of James L. Linsey" to which letters from the three arbitrators were attached. Each arbitrator agreed that the Creditors' Committee may attend and participate at the hearings if Eastern and ALPA have no objections. *Id.* at ¶ 2, Exhibit A. Moreover, ALPA stated that it "has no objection to the Creditors' Committee's attendance and participation at these arbitration proceedings." *Id.* at ¶ 3.

Additionally, the arbitrators have indicated a willingness to permit the grievance procedure to go forward at a rapid pace. Nevertheless, in response to expressed concerns over the potential for delay in the arbitration process, ALPA at argument on the motion conceded the ready availability of the claims estimation procedure by the Bankruptcy Court pursuant to § 502(c) of the Code.[4] Thus, § 502(c) will act as a

---

**4.** Section 502(c) of the Code provides as follows: There shall be estimated for purpose of allowance under this section—
  (1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case; or
  (2) any right to payment arising from a right to equitable remedy for breach of performance.
11 U.S.C. § 502(c).

safety net in the event resolution of still pending arbitration proceedings threatened to unduly delay the confirmation process.

In light of the particular circumstances presented, cause exists to modify the stay with respect to the three arbitration pro- ceedings. Thus, in accordance with fore- going, ALPA's motion for relief of the au- tomatic stay pursuant to § 362(d) of the Code is hereby granted.

It is so Ordered.