In re IONOSPHERE CLUBS, INC. and Eastern Air Lines, Inc., Debtors.

AIR LINE PILOTS ASSOCIATION, INTERNATIONAL, Movant,

v.

EASTERN AIR LINES, INC., Respondent.

Bankruptcy Nos. 89 B 10448 (BRL), 89 B 10449 (BRL).

United States Bankruptcy Court, S.D. New York.

Sept. 11, 1989.

Weil, Gotshal & Manges, New York City, for debtors; Bruce R. Zirinsky, of counsel.

Akin, Gump, Strauss, Hauer, & Feld, Washington, D.C.; David Callet, of counsel.

Kramer, Levin, Nessen, Kamin & Frankel, New York City, for Official Creditors' Committee; Kenneth Eckstein, Adam Harris, of counsel.

Cohen Weiss and Simon, New York City, for Airline Pilots Ass'n; James L. Linsey, Russell Hollander, Richard Seltzer, of counsel.

MEMORANDUM DECISION ON MOTION OF AIR LINE PILOTS ASSOCIATION, INTERNATIONAL FOR RELIEF FROM THE AUTOMATIC STAY OF PROCEEDING IN EASTERN/ALPA SYSTEM BOARD OF ADJUSTMENT ARBITRATION CASE NO. 1–86.

BURTON R. LIFLAND, Chief Judge.

### RELIEF REQUESTED

The Air Line Pilots Association, International ("ALPA") seeks an Order declaring that the System Board of Adjustment's decision issued on March 8, 1989 is unaffected by the automatic stay which was triggered by Eastern Air Lines Inc.'s ("Eastern") filing for Chapter 11 on March 9, 1989 or, in the alternative, seeks an Order lifting the stay to permit the System Board of Adjustment (the "System Board") to finalize its award in Eastern/ALPA System Arbitration Case No. 1–86.

ALPA additionally seeks relief from the stay and requests this Court to direct Eastern to submit to arbitration a new and separate dispute concerning whether there has been a merger of Eastern and Continental Air Lines Inc. ("Continental") which would trigger the application of the System Board's decision in Case No. 1–86.

### BACKGROUND [1]

The current disputes between Eastern and ALPA arise over a nebulously phrased, handwritten provision of the 1986 ALPA/Eastern Collective Bargaining Agreement (the "Agreement") which refers to the Labor Protective Provisions ("LPP's"). This provision provides as follows:

> Motion or directs the reader's attention to *In re Ionosphere Clubs, Inc.,* (BRL), 105 B.R. 761, 761–62 (Bankr.S.D.N.Y.1989).

1. Ordinarily this Court presumes the reader's familiarity with the parties' collective bargaining agreement and the events preceding this

LPP's & Takeover Similar to TWA— Need to Work Out Between EAL/ALPA Legal Counsel. (the "LPP Provision").

LPP's were imposed by the Civil Aeronautics Board ("CAB") in mergers up through the 1970's. In many instances CAB imposes a set of LPP's which was first applied in the merger of Allegheny and Mohawk Airlines. This set of LPP's became known as the Allegheny–Mohawk LPP's which provides for elaborate financial guarantees to employees affected by the merger of the two airlines, including pay protection for six years, relocation allowances and moving expenses. In addition, the LPP's establish a process whereby each airline's seniority rosters would be integrated if the merger affected seniority rights.

Shortly after ALPA ratified the Agreement, ALPA and Eastern disagreed over the meaning of the LPP provision. This disagreement caused ALPA to file a grievance on August 6, 1986 and then to submit the grievance to the System Board for resolution on September 5, 1986. Eastern refused to process ALPA's grievance or to submit the grievance to the System Board. Instead, Eastern responded by filing an action on June 10, 1986 in the District Court for the Southern District of Florida alleging that ALPA was attempting to change its existing rates of pay, rules and working conditions in violation of the parties' Agreement. On July 10, 1986 Eastern amended its filing, alleging that no valid collective bargaining existed between the Union and Eastern, and further amended its complaint on September 9, 1986 to incorporate the LPP grievance which had been submitted to arbitration before the System Board. The United States District Court for the Southern District of Florida held that ALPA and Eastern entered into a valid and binding collective bargaining agreement and Ordered Eastern to submit the LPP grievance. *Eastern Air Lines, Inc. v. ALPA,* 670 F.Supp. 947, 958 *aff'd* 861 F.2d 1546 (11th Cir.1988).

Subsequent to the Eleventh Circuit's ruling, the LPP grievance was submitted to Arbitrator Frank Elkouri[2]. Hearings were conducted throughout 1988 and post-hearing briefs were mailed by both parties. The five members of the Board met on February 7, 1989 for discussion of the case in executive session. The Board members agreed at this session that Arbitrator Elkouri would "prepare a *proposed* decision, and that the Board members would have two weeks (from the date of the letter transmitting that proposed decision) in which to request another executive session." (*See,* ALPA's Motion, Exhibit G, at 1, Proposed Decision Case No. 1–86.) Accordingly, on Saturday, March 4, 1989 Arbitrator Elkouri *mailed* copies of his proposed decision to other members of the System Board and stated in his cover letter that "[i]f no request for another executive session reaches me by March 18, I will send signed copies of the *proposed* decision to the Board Members at that time." (*See,* Eastern Airline's Memorandum of Law, Exhibit 1.) On Wednesday, March 8, 1989, after an *ex parte* communication from ALPA Board member Larry Wells concerning Eastern's imminent bankruptcy filing, Arbitrator Elkouri, in contravention of the established deliberative protocol for achieving a decision, signed the previously unsigned proposed decision and transmitted it to Mr. Wells by FAX. The signatures of ALPA's two System Board members were attested to by a notary on March 9, 1989, at 9:30 a.m.. (The Agreement does not require that the signatures of the System Board members be notarized.) (*See,* Order Fixing Date and Time of Hearing at 8.) However, on March 9, 1989 at 9:23 a.m. Eastern had already filed a petition for reorganization.

It should be noted that Arbitrator Elkouri's final decision and award in Eastern/ALPA System Board Case No. 1–86, finds that the 1986 Agreement contains certain LPP's as they exist in the Allegheny–Mohawk Agreement. Specifically, Arbitrator Elkouri found that the 1986 Agreement embodies those LPP's found in B 2(a),

---

**2.** Arbitrator Elkouri is a well-known labor arbitrator in the United States and a co-author of

*How Arbitration Works,* a treatise on labor arbitration.

3 and 13 of the Allegheny–Mohawk LPP's.[3] (*See*, Order Fixing Date and Time of Hearing, Exhibit G to ALPA's moving papers.) *The award did not address the disagreement between Eastern and ALPA about whether the provisions of Sections 3 had been "triggered".* *Id.* (emphasis added).

## THE SECOND GRIEVANCE

On March 29, 1989 ALPA requested that Mr. Frank Lorenzo, Chairman of Texas Air Inc. ("Texas Air"), meet with ALPA to integrate the seniority lists of Eastern and Continental pilots. ALPA alleged that Texas Air integrated Eastern and Continental operations thereby requiring the integration of seniority lists of both companies pursuant to §§ 2 and 3 of the Allegheny–Mohawk LPP's. Andy Childers, Continental's Staff Vice President, and Charles Goolsbee, Senior Vice President of Texas Air, replied that there is no reason to discuss the integration of the seniority lists of the pilots of Eastern and Continental Airlines because the two airlines operate as separate entities. (*See*, Order Fixing Time and Date of Hearing, Exhibit I, at 4–5.)

By letter dated May 8, 1989, John J. Bavis, Jr., Chairman of the Eastern–ALPA Master Executive Council, requested that the National Mediation Board ("NMB") proffer a list of arbitrators from which a neutral party would be chosen to settle disputes arising out of the System Board's purported "decision" in Case No. 1–86. By letter dated May 12, 1989, counsel for Eastern responded to Captain Bavis stating that the automatic stay voided the System Board's purported "decision." Eastern's counsel also noted that the "decision" was issued in clear violation of System Board procedure and that the dispute "as to whether a merger had taken place would be resolved pursuant to the parties' conventional grievance procedures, and not under Section 13 [of the Allegheny–Mohawk LPP's]." (*See*, Eastern's Memorandum, Exhibit 4 (May 12, 1989 letter from Eastern's counsel to NMB) at 2 n. 1.)

On May 15, 1989, Captain Bavis attempted to file a grievance based upon Eastern's refusal to recognize and implement the award of the System Board of Adjustment in ALPA Case No. 1–86. In response, Eastern asserted that the arbitration award circumvented regular procedures and violated the automatic stay provisions. Eastern also asserted that "[b]ecause of the

3. Section 2(a) of the Allegheny–Mohawk LPP's provides:

> The term "merger" as used herein means joint action by the two carriers whereby they unify, consolidate, merge, or pool in whole or in part their separate airline facilities or any of the operations or services previously performed by them through such separate facilities.

Section 3 provides:

> Insofar as the merger affects the seniority rights of the carriers' employees, provisions shall be made for the integration of seniority lists in a fair and equitable manner, including, where applicable, agreement through collective bargaining between the carriers and the representatives of the employees affected. In the event of failure to agree, the dispute may be submitted by either party for adjustment in accordance with Section 13.

Section 13 of the Allegheny–Mohawk LPP's provides:

> (a) In the event that any dispute or controversy (except as to matters arising under Section 9) arises with respect to the protections provided herein, which cannot be settled by the parties within 20 days after the controversy arises, it may be referred by any party to an arbitrator selected from a panel of seven names furnished by the National Mediation Board for consideration and determination. The parties shall select the arbitrator from such panel by alternatively striking names until only one remains, and he shall serve as arbitrator. Expedited hearings and decisions will be expected, and a decision shall be rendered within 90 days after the controversy arises, unless an extension of time is mutually agreeable to all parties. The salary and expenses of the arbitrator shall be borne equally by the carrier and (i) the organization or organizations (cont.) representing the employee or employees, or (ii) if unrepresented, the employee or employees or group or groups of employees. The decision of the arbitrator shall be final and binding on the parties. (b) The above condition shall not apply if the parties by mutual agreement determine that an alternative method for dispute settlement or an alternative procedure for selection of an arbitrator is appropriate in their particular dispute. No party shall be excused from complying with the above condition by reason of having suggested an alternative method or procedure, unless and until that alternative method or procedure shall have been agreed to by all the parties.

award in ALPA Case # 1–86 is void and without effect, ... Eastern declines to conduct an "Investigation and Hearing" as requested in your May 15, 1989 letter." (*See*, Order Fixing Time and Date of Hearing, Exhibit J at 1–2.)

## ISSUES

I. Whether the automatic stay pursuant to § 362 of the Code is applicable to the System Board's informally issued award in Case No. 1–86 allegedly issued on March 8, 1989, but notarized on March 9, 1989 at 9:30 a.m.

II. Whether the automatic stay should be lifted to permit the System Board to issue its opinion in the arbitration proceeding in Case No. 1–86.

III. Whether the automatic stay should be lifted regarding the commencement of a new and separate arbitration concerning whether there has been a merger of Eastern and Continental which would trigger, *inter alia*, the application of the System Board's decision in Case No. 1–86.

## DISCUSSION

I. *The applicability of the automatic stay.*

■ Section 362(a)(1) of the Code provides for an automatic stay which springs into effect upon the filing of a petition for reorganization. "[T]he stay halts the continuation of judicial and other actions, proceedings or claims that were commenced against the debtor prior to the bankruptcy filing. The automatic stay prevents creditors from reaching the assets of the debtor's estate piecemeal and preserves the debtor's estate so that all creditors and their claims can be assembled in the bankruptcy court for a single organized proceeding." *In re Ionosphere Clubs, Inc.,* 105 B.R. 761, 763 (Bankr.S.D.N.Y.1989), *citing In re Colin, Hochstin Co.,* 41 B.R. 322, 324 (Bankr.S.D.N.Y.1984). The stay precludes the "commencement or continuation" of all proceedings against the debtor, including arbitration proceedings. 2 Collier on Bankruptcy, ¶ 362.04, at 362–32 (15th ed. 1989); *In re Johns–Manville Corp.,* 31

B.R. 965, 969 (Bankr.S.D.N.Y.1983); *In re Colin Hochstin Co.,* 41 B.R. at 324. Thus, upon the Eastern bankruptcy filing on March 9, 1989, Arbitrator Elkouri would have been prevented from issuing a final decision on the agreed upon date of March 18, 1989.

Based on the record before this Court, it is apparent that both the letter and spirit of federal bankruptcy law and the System Board's own internal procedures were violated upon the issuance of the award in question. First, the issuance of the award was clearly in violation of the System Board's Agreement and is consequently null and void. *Jones v. St. Louis S.F. Ry. Co.,* 728 F.2d 257, 264 (6th Cir.1984) *cert. denied,* — U.S. —, 108 S.Ct. 1741, 100 L.Ed.2d 204 (1988), *reh'g denied,* — U.S. —, 109 S.Ct. 14, 101 L.Ed.2d 964 (1988); *Switchmen's Union of N. Am. v. Clinchfield RR Co.,* 310 F.Supp. 606, 610 (E.D. Tenn.1969) *aff'd* 427 F.2d 161 (6th Cir. 1970), *cert. denied,* 400 U.S. 824, 91 S.Ct. 48, 27 L.Ed.2d 53 (1970); Elkouri and Elkouri, *How Arbitration Works,* 4th ed. (1985) at 133 n. 62 (hereinafter ("*Elkouri*")). "Once the case record has been closed, an arbitrator must adhere to the time limits for an award, as stipulated in the labor agreement or as provided by regulation of an administrative agency or otherwise agreed." *Brotherhood of Railway and Steamship Clerks v. Norfolk S. Ry. Co.,* 143 F.2d 1015, 1017 (4th Cir.1944); Code of Professional Responsibility, § II(J)(3) as quoted in *Elkouri* at 277 n. 62. It was agreed that the issuance of a decision would be on March 18, 1989 at the earliest, but instead Elkouri and the two Union-affiliated Arbitrators issued the award on what is alleged to be March 8, 1989. As stated in Arbitrator Elkouri's own treatise, awards that violate the time restrictions in which the award should be issued must be set aside. Thus the award must be deemed null and void.

Additionally, although ALPA claims that the decision was rendered on March 8, 1989, the document was notarized on March 9, 1989 at 9:30 a.m., seven minutes after Eastern's Chapter 11 petition was

filed. Although ALPA argues that there was no need to notarize the award, the notarized document is the most credible evidence that the decision was actually rendered on March 9th after the automatic stay was in effect and not March 8th. Under ordinary circumstances perhaps such a technical adherence to the timing issue would not be dispositive. However, as the foregoing discussion reveals, the events surrounding the issuance of the award were far from ordinary. Thus, the issuance of the award was in violation of the automatic stay and is consequently null and void. The filing of the bankruptcy prevented the System Board from formally rendering its decision.

II. *Relief from the automatic stay to permit the issuance of the System Board's opinion in Arbitration case No. 1–86.*

 The automatic stay may be lifted "for cause" pursuant to § 362(d), which provides in relevant part:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay ...
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest....

11 U.S.C. § 362(d). Cause may include permitting a debtor to continue proceedings in another tribunal. *In re Ionosphere Clubs, supra* at 763. Whether a case should be submitted to arbitration is left to the sole discretion of the bankruptcy court. *Id; In re Continental Airlines Corp.,* 60 B.R. 472, 478 (Bankr.S.D.Tex.1986); *Zimmerman v. Continental Airlines Corp.,* 712 F.2d 55, 59–60 (3d Cir.1983), *cert. denied,* 464 U.S. 1038, 104 S.Ct. 699, 79 L.Ed.2d 165 (1984); *In re Amalgamated Foods, Inc.,* 41 B.R. 616 (Bankr.D.Cal.1984); *In re Cross Electric Co., Inc.,* 9 B.R. 408, 409 (Bankr. W.D.Va.1981). A bankruptcy court must determine if the arbitration would result in detrimental consequences to the estate. "[B]ankruptcy actions should not be subject to unnecessary delay and all claims and issues relevant to such actions should be resolved in one expeditious proceeding."

*In re Continental AirLines Corp.,* 60 B.R. at 477 (quoting *Zimmerman v. Continental Airlines,* 712 F.2d at 56.) The court should consider, *inter alia,* "whether arbitration will preserve labor peace, bring to bear the expertise of the arbitrator on issues such as working conditions or shop practices, and at the same time, avoid usurpation of the bankruptcy court's critical role in the reorganization proceeding." *In re Ionosphere Clubs, Int'l,* 105 B.R. 761, 764 (Bankr.S.D.N.Y.1989) (quoting *Bohack Corp. v. Truck Drivers Local Union No. 807,* 431 F.Supp. 646, 653 (E.D.N.Y.1977), *aff'd.,* 567 F.2d 237 (2d Cir.1977), *cert. denied,* 439 U.S. 825, 99 S.Ct. 95, 58 L.Ed.2d 117 (1978).)

 In the present case, Eastern has agreed to submit Case No. 1–86 to the arbitrator for the sole "ministerial act of issuing its previously prepared opinion as a final decision...." (*See,* Eastern's Memorandum at 2.) It should also be noted that the Official Committee of Unsecured Creditors (the "Committee") also consents to this limited modification of the stay. (*See,* Committee's Response at 2.)

Another factual consideration which favors lifting the stay in this instance is Arbitrator Elkouri's *explicit* statement that "the question whether there actually has been any merger is not before the Board in the present case ..." (*See,* ALPA's Motion Exhibit G at 5.) Additionally, the award "merely interprets the labor protective provisions contained in the 1986 [collective bargaining] Agreement. The arbitration award stops short of establishing a breach of those provisions and contains no award of monetary damages." (*See,* Eastern's Memorandum of Law, at 16.) As a result, the ministerial act of signing the award will in no way prejudice the estate. Since signing the award will not adversely impact the creditors and will in no way usurp the bankruptcy court's role in the reorganization proceedings, and based upon the consent of both Eastern and the Committee, this Court grants ALPA's motion to modify the automatic stay solely to allow the System Board to perform the ministerial act of formally issuing its final decision in Case No. 1–86.

III. *Relief from the automatic stay regarding the commencement of a new and separate arbitration concerning whether there has been a merger of Eastern and Continental which would trigger, inter alia, the application of the System Board's decision in Case No. 1–86.*

■ ALPA has failed to show cause or special circumstances which warrant lifting the stay in this regard. The automatic stay's purpose is to protect the debtor from its creditors and to provide for the orderly administration of the debtor's estate. H.R. Rep. No. 595, 95th Cong., 1st Sess. 343–44 (1977); *Bohack Corp. v. Borden, Inc.*, 599 F.2d 1160, 1161–62 (2d Cir.1979). The automatic stay should be lifted where the proceedings bear no relationship to the protection of the debtor, or the orderly administration of the estate. However, no "cause" exists for modifying the stay where the commencement or continuation of a lawsuit will interfere with or cause prejudice to the administration of the bankruptcy case. *In re Penn–Dixie Indus., Inc.*, 6 B.R. 832, 835 (Bankr.S.D.N.Y.1980). With specific reference to labor arbitrations, a bankruptcy court may not "relinquish to the arbitrator decisions that touch on special bankruptcy interests." *Bohack Corp.*, 431 F.Supp. at 653.

■ ALPA asserts that there are "two federal court opinions holdings that the instant dispute should be determined in labor arbitration, *see Eastern Air Lines, Inc. v. Air Line Pilots Ass'n, Int'l et. ano.*, 670 F.Supp. 947, 953 (S.D.Fla.1987), *aff'd* 681 [861] F.2d 1546, 1555 (11th Cir.1988)...." ALPA's Reply at 5–6. However, the issue involved in ALPA's proposed arbitration proceeding was never before either of the two courts. Rather, the "special competence" of the arbitrator which the courts addressed involved, *inter alia*, the interpretation of vague provisions in the Agreement. The interpretation of the LPP's was resolved by the proposed award in Case No. 1–86 which established the precise terms of the LPP's in the Agreement. However, this new arbitration involves the application of those terms. In this situation the special expertise of the arbitrator on the issue of whether there was a merger [4] of Eastern and Continental is not needed.

Moreover, allowing the arbitration to proceed would usurp the bankruptcy court's critical role in the reorganization proceedings, affect special bankruptcy interests, and thwart the goal of judicial speed and economy which is particularly necessary for the rehabilitation of this Debtor. *See, Bohack*, 431 F.Supp. at 653. The arbitration which ALPA seeks to commence, would determine, *inter alia*, whether pre-petition asset transactions triggered its contractual LPP's. In these bankruptcy proceedings, the Examiner, in the performance of his statutory duties and at the direction of this Court, has already accelerated an investigation of asset transfers and has conducted an extensive evaluation of the very asset transactions that would be at issue in the requested arbitrations. Consequently, all of ALPA's allegations as to asset transfers are being carefully examined. Thus, ALPA's reference to *In re Rabin*, 53 B.R. at 530–31, in which the Bankruptcy Court permitted an action to proceed to another tribunal so that the bankruptcy court would be relieved from those duties that may be handled elsewhere, is not compelling in this instance because this Court is already addressing the main issues that would go before the System Board. In fact, the very heart of this reorganization process may involve the resolution of ALPA's various asset-transfer allegations, and thus to allow yet another tribunal to address these issues will clearly have an adverse fragmenting impact on these proceedings.

Additionally, the proposed proceeding would, in many respects, be similar to the lengthy "single carrier" proceeding currently stayed before the National Mediation Board. *In re International Ass'n of Machinists & Aerospace Workers*, NMB File Nos. CR–6053 to CR–5059, CR–6061, CR–6066, AND CR–6067. In that proceed-

---

4. *See,* footnote 3 *supra.*

ing ALPA, and the other Eastern unions, seek a ruling that Eastern and Continental constitute a single transportation system under the Railway Labor Act. In the NMB proceedings, 46 days of hearings have been conducted, 2,000 exhibits have been presented, 45 witnesses have testified, and approximately 8,000 pages of transcripts have been created. ALPA's current motion seeks to repeat these extensive hearings. In addition, ALPA's "asset transfer" theories have been rejected by other courts. *ALPA v. Eastern Air Lines, Inc.,* 863 F.2d 891 (D.C.Cir.1988), *pet. for cert. filed,* 57 U.S.L.W. 3603 (U.S. Feb. 24, 1989) (No. 88-1403); *ALPA v. Eastern Air Lines, Inc.,* 701 F.Supp. 865 (D.C.1988).

ALPA argues that the arbitration concerns the integration of the pilot seniority lists at Eastern and Continental and not the disbursement of money from the debtor's estate. Additionally, ALPA asserts that no great prejudice to the estate would result since the award sought does not concern the disbursement of money. ALPA also claims that it would be more economical and convenient to permit the grievance to proceed to arbitration. *In re Rabin,* 53 B.R. 529, 530–31 (Bankr.D.N.J.1985); *In re Smith Jones, Inc.,* 17 B.R. 126 (Bankr.D. Minn.1981); *In re Allen & Hein, Inc.,* 59 B.R. 733 (Bankr.S.D.Cal.1986). However, this Court disagrees. It is clear that there would be great expenses involved both in terms of money and time that would be spent in allowing this to proceed before the System Board. ALPA is clearly requesting the duplication of both this Court's and indeed the NMB's efforts. Moreover, it is unclear at this time whether any potential award solely concerns the integration of the pilot seniority lists or whether there is a possibility of a substantial monetary award in addition. Thus, ALPA's assertion that it would be more economical to allow the arbitration to go forward is disingenuous at best.

ALPA's final argument is that the stay should be lifted because this Court might not be able to provide relief due to the questionable jurisdiction that this Court has over non-debtors Texas Air and Continental. ALPA asserts that the dispute in question should be adjudicated "in a forum which has jurisdiction over ALPA, Texas Air, Eastern and Continental." ALPA's Reply at 14–15. However, this argument fails to explain why submission to the System Board would be more appropriate. The jurisdiction of the System Board is even more questionable: it is a panel created solely by the Debtor and ALPA and is even less likely to have jurisdiction over Texas Air and Continental. Although ALPA submits that based on a stipulation executed by Texas Air and Eastern an arbitrator would have jurisdiction over Eastern, Texas Air and Continental, this Court is not persuaded that this is, in fact, the case. It is clear that Continental is not subject to the System Board's arbitration. Additionally, although it is still unclear, how, based on this stipulation, Texas Air is subject to the System Board's jurisdiction, it cannot be disputed that any decision by this Court would have a substantial impact on Texas Air, the corporate parent of the Debtor.

## CONCLUSION

For all of the foregoing reasons, ALPA's motion to lift the stay shall be granted in part, solely to permit Arbitrator Elkouri to formally issue his opinion in System Board Case No. 1–86. ALPA's motion to lift the automatic stay with respect to applying the decision in a new and separate arbitration proceeding is hereby denied.

It is so Ordered.